UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOPSTEPTRADER, LLC<br>         Plaintiff,<br><br>   v.<br><br>ONEUP TRADER, LLC,<br>         Defendant. | )<br>)<br>)<br>)<br>)<br>) Case Number: 17-cv-4412<br>)<br>) **JURY TRIAL DEMANDED**<br>) |

## COMPLAINT

TopstepTrader, LLC ("TST") operates the internationally renowned premier scouting and recruiting program to attract, vet, and fund prospective traders that uses patent pending technology, which has been featured or cited in numerous news articles, such as in Forbes, CNBC, Bloomberg, Fox Business, and MarketWatch, among others. It provides its clients with software and training that it spent thousands of hours developing and perfecting. But rather than invest time and resources into developing its own content, and in violation of the agreements it entered, Defendant OneUp Trader, LLC ("OneUp") implanted its people into TST's training program to gather business intelligence to study TST's business platform and intellectual property, and then it wholesale copied TST's business platform and its copyrighted website content to use on its own website. By using the information it collected from TST's program, and by wholesale copying TST's content, OneUp was able to become immediately competitive in the financial technology field. Rather than expending those resources itself, OneUp rode off of TST's hard work. OneUp's copying and unpermitted uses of TST's information constitutes copyright infringement and breach of contract.

1

## PARTIES

1. Plaintiff TopstepTrader, LLC ("TST") is an Illinois limited liability corporation with a principal place of business at 130 South Jefferson St., Ste. 200, Chicago, Illinois 60661.

2. Upon information and belief, Defendant OneUp Trader, LLC ("OneUp") is a Delaware limited liability corporation with a principal place of business at 501 Silverside Rd. Ste. 403, Wilmington, Delaware 19809.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over TST's claims because they arise under the Copyright Act, 17 U.S.C. § 101 *et seq.*, because the parties are completely diverse, and the amount in controversy exceeds $75,000. Federal subject matter jurisdiction is therefore conferred by 28 U.S.C. §§ 1331, 1332, and 1338.

4. This Court has supplemental jurisdiction over the Parties' state law claims in this Complaint, which arise under the statutory and common law of the State of Illinois, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

5. Venue and personal jurisdiction are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims herein occurred here in this District, Defendant is doing business in this District, and Defendant has promoted infringing goods and services in this District.

6. This Court has personal jurisdiction over Defendant because it has continuous and systematic contacts with the state of Illinois, and because it has purposefully directed its activities toward the state of Illinois, causing harm suffered in the state of Illinois, does business in this District, and because this action is based upon activities that arise out of or relate to those

contacts.

7. Defendant further consented to the exclusive jurisdiction before this Court in connection with any action arising out of or related to the contract at issue or its subject matter, and it waived any objection based on lack of personal jurisdiction, place of residence, improper venue or forum non-conveniens in any such action.

## FACTUAL BACKGROUND

8. TST created a novel software that allows individuals interested in trading financial instruments to enter into a simulated market that mirrors the live market, and based on individual performance, to get funded to trade financial instruments on the live market in exchange for a share of the profits.

9. In less than a decade, TST has grown from a few employees to a multi-million-dollar company that is now the worldwide leading provider of its proprietary system for scouting and funding traders.

**A. *TST's Patent-Pending Software and Intellectual Property***

10. In exchange for a monthly subscription fee, a prospective trader first enters into the Trading Combine®, where the individual will trade financial instruments in a simulated market mirroring the live market. If the prospective trader successfully stays within the parameters and hits specified benchmarks, they will be placed in Funded Trader Preparation®, where the individual will get accustomed to trading within the same parameters as their live account. If the individual again stays within the parameters, the prospective trader will be placed into a Funded Account™. At this point, the trader and TST then split the profits.

11. This patent-pending technology and software is a one-of-a-kind product that is at the forefront of the field, which has unfortunately led to copycats.

12. Because of its innovative technology and process, TopstepTrader has received many accolades, including being named a 2016 FIA Innovator by the Futures Industry Association, was a 2016 Chicago Innovation Awards Finalist, and its founder and CEO, Michael Patak, was also recognized by Ernst & Young as a finalist for its Entrepreneur of the Year Award.

13. TST has been featured in numerous news articles, including by Forbes as a "Techweek Compan[y] To Bet On", and has also appeared in news sources like CNBC, Bloomberg, Fox Business, MarketWatch, Built in Chicago, among others. TopstepTrader was also listed as one of the "101 Best and Brightest Companies to Work For" in 2016 and 2017.

14. TST is the true, rightful, and sole owner of all copyrights and intellectual property at issue in this action, including the copyright listed below, except as otherwise noted.

15. TST's copyright has an application for registration filed with the United States Copyright Office.

16. TST owns Copyright Application No. 1-4001234481, named www.topsteptrader.com. Exh. A.

17. TST has invested substantial time and resources into developing its copyrighted material.

**B.  *TST's Terms of Use***

18. TST's website is available to the general public, subject to agreement to TST's Terms of Use ("TOU"). A true and correct copy of TST's TOU is attached as Exh. B.

19. TST's website's users accept TST's TOU when they access and use of the site. The TOU states that, "[b]y using our Sites or Services, whether by accessing, creating an account, posting or downloading content or otherwise, you accept and agree to be bound by these

Terms." Exh. B, at 2.

20. Additionally, TST has a sign-up page that requires users to certify that they agree to TST's TOU, and TST provides a link to the TOU. Exh. C.

21. The TOU state that users are granted a limited and revocable license to access and use TST's website, which, among other things, include various restrictions to that limited license. For instance, the license restrictions state a user "shall not reproduce, distribute, modify, create derivative works of, publicly display, publicly perform, republish, download, store or transmit and of our material," and that a user "shall not access or use for any commercial purposes any part of [TST's] Sites or Services." Exh. B, at 12.

22. The TOU also require users to acknowledge and agree that "[TST's] Sites or Services and their entire contents, features, and functionality (including, all information, software, text, displays, images, video and audio, and the design, selection and arrangement thereof), are owned by TopstepTrader, its licensors or other providers of such material and are protected by United States and international copyright, trademark, patent, trade secret, and other intellectual property or proprietary rights laws and treaties." Exh. B, at 12.

23. The TOU further states that "no portion of [TST's] Sites or Services, their contents or any copyright, trademark, trade name, service mark or any other proprietary information of [TST] displayed on [TST's] Sites or Services…may be reproduced, altered, transmitted, published or distributed, whether electronically [or otherwise]…without the prior written permission of [TST]," and users "agree not to undertake any action that will interfere with or diminish [TST's] right, title or interest in [its] intellectual property." Exh. B, at 12.

24. The TOU also expressly forbids the "use [of] the Sites or Services to gain competitive intelligence about [TST] or the Sites or Services to compete with [TST] or its

5

affiliates." Exh. B, at 15.

25. Users further agree that any "breach of the provisions of this Agreement [will] cause irreparable harm and significant injury," and that "[TST] has the right to enforce the provisions of this agreement by injunction." Exh. B, at 15-16.

26. All users also agree that the TOU shall be "governed by and construed in accordance with the laws of the State of Illinois," and they "irrevocably consent to the exclusive jurisdiction of the courts located in the State of Illinois in connection with any action arising out of or related to these Terms and their subject matter," and further "waive any objection based on lack of personal jurisdiction, place of residence, improper venue or forum non conveniens in any such action." Exh. B, at 14.

27. As described in greater detail below, OneUp's conduct is in flagrant violation of each of these provisions.

## DEFENDANT ONEUP'S MISCONDUCT

28. Defendant OneUp copied TST's copyrighted content to short-cut its product development, and to directly compete with TST by providing a copycat service. Indeed, it even stole the same process as TST in that prospective traders trade on a simulator, and upon satisfying certain profit goals and remaining within certain parameters, get funded with a profit split between the company and the trader.

29. In an effort to deliver its product to its customers faster, and to undercut TST's subscription prices and profit splits, OneUp chose to copy TST's copyrighted website material, rather than invest its own time and resources into developing it.

30. Upon information and belief, and despite agreeing to TST's Terms of Use prohibiting such activity, OneUp implanted its people, including two of its founders, into TST's

program to gain an unfair competitive advantage by learning the methodologies of TST's business, and to collect business intelligence about TST's business and methods, and to copy TST's content and copyrighted materials, which they incorporated into OneUp's business and website.

31. In direct breach of TST's TOU, these individuals and OneUp then used that ill-gotten information to develop a copycat platform to TST.

32. Rather than create its own novel website and process, OneUp copied TST's content wholesale, and then tried to hide its direct copying by modifying its content once it was uncovered. Indeed, OneUp even copied many portions of TST's website verbatim, and only changed some of the content after the copying was discovered by TST.

33. Because OneUp copied the information directly, and violated the TOU, it unfairly competed by being able to forgo the costs of developing its own system and content, and was able to short-circuit the time, resources and intellectual capital required to develop the product and system; significant resources that TST expended to start its business. This copying and ill-gotten information then allowed OneUp to undercut TST's prices.

34. In fact, in OneUp's wholesale copying of the website, it even used many of TST's trademarks, including numerous instances of exact copying and use of TST's FUNDED ACCOUNT$^{TM}$ trademark. Exh. D.

35. Only after receiving a cease & desist letter from TST, OneUp finally took down some instances of its use of TST's FUNDED ACCOUNT$^{TM\ trademark}$, while leaving others, and also made some other changes to mask its copyright infringement. Exh. E.

36. However, OneUp's website still contained numerous graphs and tables with either no change or *de minimus* changes as compared to TST's website. Exh. E, at 2-3, 6, 9, 12-13, 15.

Further, OneUp's help section contained multiple pages that were copied verbatim from TST's. Exh. E, at 2, 3.

37. Upon receipt of TST's second letter dated May 9, 2017, OneUp made some more revisions to its website. However, its website and process are still in breach of TST's TOU.

38. TST sent one final letter on May 31, 2017, however, OneUp chose to ignore TST's demands to stop violating its TOU, and instead OneUp launched its website today, June 12, 2017. Exh. F.

39. Because OneUp is in the same field as TST, and because OneUp had knowledge that TST owned the copyrighted material, its infringement and breach of the TOU is willful.

40. OneUp's actions have resulted in, and will continue to result in, substantial and irreparable harm to TST and consumers.

41. TST has repeatedly requested that OneUp remove TST's copyrighted content from its website and cease all business activities in breach of TST's TOU. Exh. G.

42. But OneUp has rejected all of TST's reasonable requests to resolve the matter amicably, so TST was forced to file the instant suit.

## COUNT I
## COPYRIGHT INFRINGEMENT

43. TST incorporates the allegations from the preceding paragraphs as if fully set forth herein.

44. TST has applied for copyright registrations with the United States Copyright Office.

45. TST is the true, rightful, and sole owner of the copyrights in its website materials, including Copyright Application No. 1-4001234481.

46. By its actions alleged above, OneUp has infringed TST's copyrights by copying

and willfully reproducing and distributing into the market infringing content with knowledge that they are either direct copies or derivatives of TST's copyrighted website content.

47. OneUp copied copyrighted content owned by TST without authority for the entirety of its website, including at www.oneuptrader.com/how-it-works/ .

48. OneUp's acts of copyright infringement have caused and will continue to cause damage to TST, in an amount to be proved at trial.

49. TST is additionally entitled to statutory and enhanced damages, attorneys' fees, costs, and injunctive relief.

## COUNT II
## BREACH OF CONTRACT

50. TST incorporates the allegations from the preceding paragraphs as if fully set forth herein.

51. Use of TST's website and use of TST's services are governed by and subject to TST's TOU. Exh. B.

52. TST's users are presented with TST's TOU and must agree to the TOU in order to get an account.

53. At all relevant times, TST also prominently displayed a link to the TOU on TST's homepage.

54. Upon information and belief, two of OneUp's employees and/or owners affirmatively accepted and agreed to the TOU to access TST's software.

55. Even if none of OneUp's employees and/or owners entered TST's proprietary program, the TOU are prominently displayed on TST's webpage. Further, OneUp wholesale copied TST's website, and must have had notice of TST's TOU.

56. TST's TOU are enforceable and binding on OneUp.

57. With full knowledge of the TOU and all of its prohibitions, and despite agreeing to abide by them, OneUp copied TST's copyrighted content and its business protocols, and used its website and business as a template for its own competing product, without TST's consent.

58. OneUp has violated the TOU provision that states that a user "shall not reproduce, distribute, modify, create derivative works of, publicly display, publicly perform, republish, download, store or transmit and of our material." Exh. B, at 12.

59. OneUp has also violated the TOU provision that states that a user "shall not access or use for any commercial purposes any part of [TST's] Sites or Services." Exh. B, at 12.

60. OneUp has also violated the TOU provision that states that "no portion of [TST's] Sites or Services, their contents or any copyright, trademark, trade name, service mark or any other proprietary information of [TST] displayed on [TST's] Sites or Services…may be reproduced, altered, transmitted, published or distributed, whether electronically [or otherwise]…without the prior written permission of [TST]." Exh. B, at 12.

61. OneUp has violated the TOU provision as well that states that users "agree not to undertake any action that will interfere with or diminish [TST's] right, title or interest in [its] intellectual property." Exh. B, at 12.

62. OneUp further violated the TOU provision that expressly forbids it to "use [TST's] Sites or Services [of TST] to gain competitive intelligence about [TST] or the Sites or Services to compete with [TST] or its affiliates." Exh. B, at 15.

63. OneUp has willfully, repeatedly, and systematically breached these, and other provisions, of TST's TOU.

64. TST has performed all conditions, covenants, and promises required of it in accordance with TST's TOU.

65. OneUp's conduct has damaged TST, and caused and continues to cause irreparable harm and injury to TST.

66. TST is entitled to injunctive relief, compensatory damages, reasonable attorneys' fees, and/or equitable relief.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff TopstepTrader, LLC respectfully request that this Court:

1. Enter judgment in favor of TST on each of its claims;

2. Award TST its actual damages against Defendant to be determined at trial;

3. Award TST Defendant's profits from its aforementioned activities;

4. Award TST statutory damages against Defendant;

5. Award TST punitive damages against Defendant;

6. Award TST all of its costs and reasonable attorneys' fees in this action as authorized by 17 U.S.C. § 505 and other applicable laws;

7. Awarding pre- and post-judgment interest at the maximum legal rate and costs;

8. Award TST an accounting for damages and for all the profits together with those profits lost by TST due to the actions of OneUp claimed herein for OneUp's acts of copyright infringement;

9. Preliminarily and permanently enjoin Defendant and its predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, those acting in privity or concert with them, or on their behalf, from:

    a. Continuing to operate its website and business in direct contravention of TST's TOU;

      b.      Utilizing the proprietary knowledge its employees gained while passing through TST's program to design its competing business;

      c.      Displaying, copying, distributing, promoting, offering, disseminating, or selling TST's copyrighted materials or any modification, derivation, or reproduction thereof;

      d.      Representing that OneUp has any rights to TST's copyrights, including ownership, license, or any other right;

      e.      Doing and engaging in any of the acts described above and directing OneUp to conform with each and every provision of this prayer for relief; and

10.      Grant to TST such other relief as may be just and warranted under the circumstances.

## JURY DEMAND

Plaintiff TopstepTrader, LLC hereby demands a jury trial on all issues so triable.

Dated: June 12, 2017                            Respectfully submitted,

By: /s/ Adam Wolek
Adam Wolek
Brian Noack
WOLEK & NOACK
333 S Wabash Ave., Suite 2700
Chicago, Illinois 60604
P 312.860.9006
F 708.843.0509
adamw@wonoip.com
briann@wonoip.com

*__Attorneys for Plaintiff TopstepTrader, LLC__*