IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOPSTEPTRADER, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ONEUP TRADER, LLC,<br><br>　　　　　Defendant. | Case No. 17 C 4412<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff TopstepTrader, LLC's Motion for a Temporary Restraining Order to enjoin Defendant OneUp Trader, LLC from continuing to operate its website and business. [ECF No. 7]. Primarily because TopstepTrader has not carried its burden to show a likelihood of success on the merits of its case, the Court denies the Motion.

## I. BACKGROUND

Plaintiff TopstepTrader, LLC ("TopstepTrader") filed this two-count lawsuit, alleging that Defendant OneUp Trader, LLC ("OneUp Trader") infringed its copyright and breached a contract obliging OneUp Trader not to compete with TopstepTrader. In its Complaint, TopstepTrader pleads that OneUp Trader accessed its website, copied its copyrighted content, and then used the materials to start a competing business. TopstepTrader further

alleges that by accessing its site – and possibly signing up for an account – OneUp Trader has agreed not to "[use] the Sites or Services to gain competitive intelligence about TopstepTrader or the Sites or Services to compete with TopstepTrader or its affiliates." ECF No. 1 (Compl.) ¶ 24 & Ex. B ¶ 22. More still, OneUp Trader has agreed that "breach of the provisions of this Agreement would cause irreparable harm and significant injury to TopstepTrader which would be both difficult to ascertain and which would not be compensable by damages alone." Compl. ¶ 25 and Ex. B ¶ 23.

TopstepTrader moved for a temporary restraining order ("TRO") ten (10) days after filing the lawsuit. At the company's request, the Court held a hearing on the Motion less than a week thereafter. The short timeframe means that no discovery has taken place. As such, the only evidence presented at the hearing was information readily available to TopstepTrader, which included the testimony of its CEO; a business record purporting to show a contract between the parties; and the public-facing portion of OneUp Trader's website, or those pages from the site that do not require a user to create an account or pay a fee to access. The dearth of evidence makes the already heavy burden that TopstepTrader faces

even more difficult to meet. Indeed, TopstepTrader did not meet it.

## II. ANALYSIS

As TopstepTrader correctly noted, the standard for an issuance of a TRO is the same as that for a preliminary injunction. *See, Kaczmarski v. Wheaton Cmty. Unit Sch. Dist. #200,* No. 04-C-2976, 2004 U.S. Dist. LEXIS 7823, at *10 (N.D. Ill. May 3, 2004). This means that TopstepTrader must show the following: "(1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *Ty, Inc. v. Jones Grp. Inc.,* 237 F.3d 891, 895 (7th Cir. 2001). Even where the Court is satisfied that these threshold conditions have been met, it will issue a TRO only if, in weighing the irreparable harm TopstepTrader will suffer if the TRO is denied against the irreparable harm to OneUp Trader if the relief is granted, the Court is convinced that the balance of equities calls for such relief. *See, id.*

Here, the Court finds that TopstepTrader has failed to show that this balance swings in its favor. Before delving into the analysis, however, the Court pauses to note that in making this determination, it considers only TopstepTrader's breach of

contract claim, and not the copyright infringement cause of action.

### A. Copyright Infringement

TopstepTrader has waived its copyright infringement claim for the purposes of the TRO. In its initial appearance before the Court, TopstepTrader stated that although "the copyright claim . . . is still pending and whatnot[,] [t]he TRO is actually on the breach of the contract." ECF No. 13 (Hr'g Tr. June 22, 2017) at 9:22-10:9. On the day of the TRO hearing, the company again represented that, "[w]hat we're pursuing for this TRO is the contract." TRO Hr'g Tr. (June 26, 2017) at 42:16.

Although TopstepTrader continued to accuse OneUp Trader of copying its content, such arguments were made in pursuit of the breach of contract claim. The relevance of any copying was limited to showing that OneUp Trader must have accessed TopstepTrader's website and thereby agreed to its terms of service not to compete. *See, e.g.,* TRO Hr'g Tr. at 9:5-7 (citing *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1171 (7th Cir. 1997) to make the point that "access can be . . . confirmed when two works are so similar to each other that one cannot help but realize they must have accessed the accounts and the content because they're such straight copies"); 39:6-11 ("So when content is copied, particularly in a scenario like this,

copied heavily, . . . that does show access, your Honor."); 40:6-41:9 ("And to this day, they still have copied content. This is unavoidable and clear access. You can't come up with some of these words, particularly words that were made up by our client."); 99:5-15 ("[T]hey obviously had access because you can't, you know, figure out the same exact words that were made up."); 185:5-8 ("[A]ll we can see is a copy but again, courts say, if you copy and there's substantial similarity, access is presumed.").

Given the express and unambiguous waiver of the copyright infringement claim for the purposes of this TRO, the Court discusses that cause of action no further.

### B. Breach of Contract

TopstepTrader therefore is left with its breach of contract claim. This claim cannot sustain the company's Motion for a TRO for three reasons: (1) TopstepTrader has not shown that it is likely to succeed in proving that an enforceable contract exists between it and OneUp Trader such that OneUp Trader could have breached a contract; (2) even if OneUp Trader had breached a contract, the breach has not been shown to cause TopstepTrader irreparable harm; and (3) any irreparable harm to OneUp Trader is outweighed by the irreparable harm to TopstepTrader of having

its business shut down. The Court discusses each of these points below.

### 1. *Enforceable Contract*

Even before the Court reaches the issue of whether there is likely an enforceable contract, it notes that whether any contract exists at all between TopstepTrader and OneUp Trader is a matter heavily disputed. During the hearing, TopstepTrader introduced into evidence a document showing that a Sattam Alsabah ("Alsabah"), now one of two owners of OneUp Trader, created an account with TopstepTrader on September 13, 2015. Alsabah's account with TopstepTrader is crucial for the latter's contract claim because when users sign up for accounts with the company, they have to click on a box that reads "Please accept Terms of Use" where the words "Terms of Use" are hyperlinked to a web page containing the actual terms. Alsabah presumably clicked on that box in 2015, and in so doing, he entered into what is called a clickwrap agreement with TopstepTrader. *See, Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 U.S. Dist. LEXIS 13691, at *11 (N.D. Ill. Feb. 5, 2015) ("A 'clickwrap' agreement is formed when website users click a button that indicates that users 'agree or accept' to terms of an agreement upon viewing its terms posted on the website.") (citing *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1175-76 (9th Cir. 2014)).

Alsabah's click, in turn, is important because "courts usually enforce a clickwrap agreement." *Sgouros,* 2015 U.S. Dist. LEXIS 13691 at *11 ("[C]ourts usually enforce a clickwrap agreement because it requires users to take affirmative action to manifest assent by clicking a button or a checkbox which accompanies a statement instructing users that their click would constitute their assent to the terms at issue.") (collecting cases). Without this click, all TopStepTrader has is a "browsewrap" agreement that inheres in OneUp Trader's access of its website. *See, Van Tassell v. United Mktg. Grp., Ltd. Liab. Co.,* 795 F.Supp.2d 770, 790 (N.D. Ill. 2011) ("[B]rowsewrap agreements do not require the user to manifest assent to the terms and conditions expressly — the user need not sign a document or click an 'accept' or 'I agree' button. Instead, browsewrap agreements typically involve a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink.") (internal citation and quotation marks omitted). Unlike clickwrap agreements, "the enforceability of browsewrap agreements depends upon whether there is evidence that the user has actual or constructive notice of the site's terms." *Abdul Mohammed v.*

*Uber Techs., Inc.*, No. 16 C 2537, 2017 U.S. Dist. LEXIS 20274, at *19 n.8 (N.D. Ill. Feb. 14, 2017).

Relying on such a browsewrap agreement is problematic for TopstepTrader. To show the enforceability of this particular browsewrap agreement, TopstepTrader would have to show that its hyperlinked "Terms of Service," placed at the bottom of the website in rather tiny font, put OneUp Trader on notice that it was assenting to those terms by accessing the website. This is too much to ask of an inconspicuous and "submerged" hyperlink. *See, Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (Sotomayor, J.) ("[A] reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms.").

This means that TopstepTrader has to rely on the contract created with Alsabah's click. This purported contract, however, comes with its own set of problems. First, for it to be plausible that OneUp Trader breached Alsabah's contract, TopstepTrader at least needs to establish that Alsabah's action in 2015 could bind OneUp Trader in 2017. In addition, the company needs to show the exact contract terms to which Alsabah agreed so that the Court may determine whether OneUp Trader likely violated those terms. While TopstepTrader made a nod towards such showings, the Court finds itself having to accept

the company's words at face value more often than it would like. For instance, although TopstepTrader represented to the Court that the 2015 Terms of Use, at least in the relevant parts, are identical to the Terms of Use found on TopstepTrader's website today, TopstepTrader did not actually introduce the 2015 terms into evidence, despite the fact that the document undoubtedly exists and is within the company's possession.

Even if the Court is willing to overlook such problems, a third obstacle remains. On its face, the provision that TopstepTrader wants to enforce against OneUp Trader is a broad non-compete covenant. The key provision forbids OneUp Trader from "[u]sing the Sites or Services to gain competitive intelligence about TopstepTrader or the Sites or Services to compete with TopstepTrader or its affiliates." ECF No. 1 (Compl.) ¶ 24 & Ex. B ¶ 22. The provision is thus without any geographic or temporal limit on OneUp Trader's ability to compete with TopstepTrader (or its affiliates). Under Illinois law, such a restrictive covenant is likely against public policy and so unenforceable. *See, Liautaud v. Liautaud,* 221 F.3d 981, 987-88 (7th Cir. 2000) (stating both that "[g]enerally, in a covenant not to compete, the agreement restricts competition within a certain town or city or within a defined radius from the promisee's own business" and "Illinois courts generally have

refused to enforce noncompetition agreements that do not limit the duration of the restriction").

Nor is the provision saved by the clause stipulating that OneUp Trader may not compete only when it uses "competitive intelligence" gained from TopstepTrader. This is because, at least for the purposes of this TRO, TopstepTrader is only complaining about the content from its public-facing website that OneUp Trader allegedly pilfered and is now displaying on its own public-facing website. *See,* TRO Hr'g Tr. at 116:7-122:8 (testimony by TopstepTrader's CEO that "in terms of public-facing sites, there's drastic similarities," and admitting that the similarities consist of things like "[t]he permitted rules and profit targets and evaluation [that] is readily available on our public site"). As such, the "competitive intelligence" referred to in the terms of use amounts to no more than publicly available information for which one did not need to agree to any contract to access. *See, id.* at 126:2-128:15 ("Q: And then 'the funded account,' we get to step three. I've got the rules here as well . . . it has the rules for this stage, and I still don't have any requests to sign the terms of use, correct? A: Correct."). But a covenant restricting the use of such widely disseminated, freely available information is likely unenforceable. *See, Curtis 1000 v. Suess,* 24 F.3d 941, 944 (7th

Cir. 1994) ("The common law of Illinois requires that a covenant not to compete, to be enforceable, [must] secure a 'protectable interest' of the employer, such as a trade secret.") (internal citation omitted); *Liautaud,* 221 F.3d at 986 ("Under Illinois law, a 'naked' promise by one merchant not to compete against another merchant is against public policy because it injures the public and the promisor, while at the same time it serves no protectible interest of the promisee.") (internal alteration and quotation marks omitted).

In sum, the terms of the agreement which TopstepTrader seeks to enforce are likely void. Without an enforceable contract, no breach is possible, and TopstepTrader is unlikely to prevail on the merits of its contract claim.

### *2. Irreparable Harm*

TopstepTrader's request for a TRO is further defeated by its failure to show irreparable harm proximately caused by the wrong alleged. Simply put, because the injury that TopstepTrader complains of stems from OneUp Trader's use of its publicly available information, the injury is disconnected from any breach of contract and so cannot be the basis for awarding a TRO.

As discussed previously, the "business intelligence" that OneUp Trader allegedly pilfered and is now using on its site

consists of publicly information available that TopstepTrader actively disseminates to attract users to its service. *See, supra,* Section II.B.1; *see also,* TRO Hr'g Tr. at 139:16–149:25. Since OneUp Trader did not need to agree to any contract to glean this information, it cannot be that by using the information, the company is breaching the contract and irreparably harming TopstepTrader. While TopstepTrader bemoans the fact that OneUp Trader is able to undercut its price by copying its business model, it has yet to show what OneUp Trader would not have been able to copy by simply looking at TopstepTrader's public website, its YouTube videos, or other marketing materials.

In short, the sole harm TopstepTrader has identified is harm from competition enabled by the very information that TopstepTrader puts into the marketplace. Such an injury cannot support the issuance of temporary injunctive relief. *See, e.g., Binney & Smith Inc. v. Rose Art Indus.,* No. 94 C 6882, 1995 U.S. Dist. LEXIS 2602, at *42 (N.D. Ill. Mar. 2, 1995) ("[Plaintiff] Binney & Smith may experience irreparable harm from competition, but the Court should not use an injunction to preclude legitimate competition until there is a determination of infringement and irreparable harm.").

Of course, all that is said so far does not rule out the possibility that OneUp Trader is somewhere, somehow, making use of information that is available only to those who signed a contract with TopstepTrader. It only means that TopstepTrader has not presented any such evidence. Until it does, the company may only pursue its claims for damages, regardless of whether the parties may have agreed otherwise. *See, New Sunshine LLC v. Gallagher,* No. 1:15-cv-825-WTL-DML, 2015 U.S. Dist. LEXIS 72225, at *3 (S.D. Ind. June 4, 2015) ("Courts characteristically hold that such stipulations [that a defendant's breach irreparably harms the plaintiff] alone are insufficient to support a finding of irreparable harm and an award of injunctive relief.") (internal alteration and quotation marks omitted).

### 3. *Balance of Harms*

Because the Court finds that TopstepTrader has shown neither a likelihood of success on the merits nor irreparable harm, it need not go further in the analysis. *See, Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008) ("If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction."). The Court nonetheless makes two brief points to address the balance of harms between the sides – if only so that

the parties may have guidance should TopstepTrader decide to move for a preliminary injunction at a future time.

First, the Court notes that the balance of harm needs to weigh heavily in TopstepTrader's favor for the Court to give it the relief it seeks. This is because, at least on the evidence presented so far, TopstepTrader's chances of success look slim. *See, Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387-88 (7th Cir. 1984) ("The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."). Second, because the relief the company seeks is the complete shutdown of OneUp Trader's business – a serious harm indeed should the Court grant the request – TopstepTrader must adduce something more than speculation about the injuries that it has suffered, continues to suffer, or is likely to suffer because of OneUp Trader. At the hearing, TopstepTrader could not identify even a single customer that it has lost to OneUp Trader; nor could it point to any evidence suggesting a loss of goodwill or erosion in its reputation because of the alleged copycat coming on to the scene. *See,* TRO Hr'g Tr. at 166:8-17. While the Court does not demand proof of particular injuries, *see, Hess Newmark Owens Wolf, Inc. v. Owens,* 415 F.3d 630, 632-33 (7th Cir. 2005), it must weigh whatever evidence

TopstepTrader brings to show injury against the concrete harm to OneUp Trader of having its business shut down. On the evidence before it, the Court finds that the balance of equities is inadequate to support issuance of a TRO.

### III. CONCLUSION

For the reasons stated herein, TopstepTrader's Motion for a Temporary Restraining Order [ECF No. 7] is denied. In so doing, the Court expresses no opinion on the ultimate merits of TopstepTrader's case but merely finds that the company has not met the burden to warrant the grant of the extraordinary remedy of temporary injunctive relief.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　United States District Court

Dated: June 28, 2017