# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TOPSTEPTRADER, LLC, | ) |
|                 Plaintiff, | ) Case Number 17-cv-4412 |
| v. | ) Judge: Hon. Harry D. Leinenweber |
| ONEUP TRADER, LLC, and SATTAM ALSABAH, | ) |
|                 Defendants. | ) |

## DEFENDANT SATTAM ALSABAH'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND <u>FAILURE TO STATE A CLAIM</u>

David J. Wolfsohn (*admitted pro hac vice*)
djwolfsohn@duanemorris.com
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax:    (215) 979-1020

*Attorney for Defendants OneUp Trader, LLC and Sattam Alsabah*

## I. INTRODUCTION

One would think that, in asserting claims against a citizen of Kuwait (Sattam Alsabah), Plaintiff TopstepTrader, LLC would have at least attempted to assert facts that might support some theory of personal jurisdiction. Yet in its third attempt to draft a viable complaint, Topstep does not even go through the motions of alleging that Mr. Alsabah had any pre-complaint contacts with the state of Illinois, much less allege facts that would support general or specific jurisdiction. Instead, Topstep alleges conclusorily that "[i]n or about September 2015, OneUp, at least through Alsabah, accessed TST's Website and agreed to be bound by the terms and conditions of the Original TOU" (SAC ¶ 38), which contained an Illinois forum-selection clause, and that corporate defendant OneUp Trader, LLC[1] is the "alter ego" of Mr. Alsabah (SAC ¶ 36). Such "labels and conclusions" are patently insufficient. First, the purported contract is based on a browsewrap agreement, which is unenforceable. As proven at the TRO hearing in this matter, Topstep's website did not require users to click to agree to the terms of use in 2015. Indeed, the terms of use were buried in tiny, inconspicuous type. Moreover, the contract is unenforceable because it lacks consideration, and because it is an unenforceable noncompete.

As for Topstep's conclusory allegation that OneUp is the "alter ego" of Mr. Alsabah, it is well established that, at the pleading stage, a plaintiff must allege facts supporting this conclusion or else it cannot be the basis for a finding of personal jurisdiction. For such a theory to be viable, a plaintiff must plead facts showing that "the corporation [is] a sham and exist[s] for

---

[1] While Topstep broadly defines OneUp to include "its predecessors in interest, successors, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, and those acting in privity or concert with them, or on their behalf" (SAC at 1), this definition is not applied thereafter. Instead, the SAC distinguishes OneUp from others. SAC ¶¶ 35 ("Defendant Alsabah"); 36 ("Alsabah . . . acted as an agent of OneUp"); 37 ("Alsabah has an ownership interest in . . . OneUp"); 42, 48 ("OneUp implanted its people, including two of its founders"); 41, 77, 78 ("OneUp and/or individuals acting for and on OneUp's behalf").

***no*** other purpose than as a vehicle for fraud." *In re Sunstates Corp. Shareholder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) (emphasis added). Moreover, the individual defendant's "wrongful acts must be tied to the manipulation of the corporate form." *Doberstein v. G-P Indus., Inc.*, CV 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015). Because Topstep has pled no such facts, it cannot establish personal jurisdiction over Mr. Alsabah based on contacts by OneUp.

Even if there were personal jurisdiction over Mr. Alsabah, Topstep's third complaint fails to state a claim against him. For its copyright infringement claim, Topstep never alleges that Mr. Alsabah ever copied anything. For its breach of contract claim, Topstep does not plausibly allege that Mr. Alsabah entered into an enforceable contract; nor does it allege that he breached one. For its unjust enrichment claim, Topstep does not allege that Mr. Alsabah ever received any specific benefit to its detriment. And, for its fraud claim, Topstep does not allege that Mr. Alsabah ever made a false statement with the intent to induce Topstep to rely on it. Moreover, because Topstep has failed to allege any facts supporting an alter ego relationship, it cannot attribute any of OneUp's alleged conduct—which also fails to state a claim—to Mr. Alsabah.

Accordingly, Topstep's claims against Mr. Alsabah should be dismissed with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Topstep provides day traders with a platform for trading, charging them hefty fees and taking a large percentage of any of their profits. *See* Exh. A, https://www.youtube.com/watch?time_continue=4&v=kpdBFSSBWfk; *see also* SAC ¶ 9. OneUp, which was formed April 5, 2017 (Exh. B, Alsabah Decl. ¶ 9), is Topstep's direct competitor (SAC ¶¶ 35, 46). OneUp offers

---

[2] Unless otherwise indicated, the facts set forth in this section are taken from the allegations in Topstep's Second Amended Complaint, which are assumed to be true only for the purposes of these motions to dismiss. OneUp's reference to any factual allegations in the SAC should not be deemed an admission of any of their truth.

trading services that are similar to but cheaper than Topstep's. SAC ¶¶ 46-47.

In April and May 2017, before OneUp had launched its platform, Topstep sent OneUp three cease and desist letters, contending that OneUp's website contained copyrighted, trademarked, and patented content, and demanding that OneUp remove that content. *Id.* ¶¶ 53-56. While OneUp disagreed that it had used any of Topstep's protectable materials, it removed much of the content in dispute before the trading platform had been launched. *Id.* ¶¶ 53-55. Despite that removal, Topstep sued OneUp for copyright infringement and breach of contract on June 12, 2017. Dkt. No. 1. At the same time, it filed a motion for a TRO. Dkt. No. 7. The motion was premised on the notion that OneUp had agreed to Topstep's terms of use because Mr. Alsabah had accessed the website and created an account on September 13, 2015, *two years before OneUp was formed*. Dkt. No. 8 at 4, 6; Exh. E, Topstep's TRO Hearing Slides at 19.

Topstep attached screenshots of two versions of its website sign-up page to its memo in support of its TRO motion. Dkt. No. 8 at Exhs. C & D. The webpage depicted in Exhibit C to the TRO memo (attached hereto as Exhibit C) contains fields for visitors to enter their first and last names, email addresses, phone numbers, user names, and passwords. Exh. C. Below these fields is a checkbox, accompanied by the phrase "Please accept Terms of Use." *Id.* During the TRO Hearing, counsel for Topstep stated that this version of the sign-up page "was in existence as of fall 2016." Exh. F, Hearing Tr. at 82:13-15.

By contrast, Exhibit D to Topstep's memo (attached hereto as Exhibit D) contains neither a checkbox nor the phrase "Please accept Terms of Use." Exh. D. Instead, below the fields for entering user information is a large green button containing the words "Sign Up." *Id.* Hidden below it, in tiny text, is the phrase, "I agree to the terms and conditions." *Id.* The words "terms and conditions" are hyperlinked, but there is no box requiring users to click to accept them. *Id.*

3

During the TRO hearing, Topstep's CEO, Jay Rudman, testified that Exhibit D showed the sign-up page that was "part of the website" on September 13, 2015, the date Topstep claims Mr. Alsabah signed up. Exh. F, Hearing Tr. at 129:23-130:1. Tellingly, Mr. Rudman did not testify that users were required in 2015 to click to accept the terms of use to access the website. Nor did Mr. Rudman testify that Mr. Alsabah ever clicked to accept the terms. Mr. Rudman did, however, admit that Topstep's website content was publicly available on YouTube, which does not "require the watcher to agree to terms of use." *Id.* at 154-55. This is confirmed by the SAC, which alleges that it was not until 2016 and 2017 that users had to accept the terms of use "by clicking on the box next to the words 'Please Accept Terms of Use.'" SAC ¶ 39.

This Court denied the TRO motion on June 28, 2017. Memorandum Opinion ("Mem. Op."), Dkt. No. 17. Among other things, the Court emphasized that, to demonstrate the existence of an enforceable contract, "Alsabah's click . . . is important" and that, "[w]ithout this click, all TopStepTrader has is a 'browsewrap' agreement" that would likely be unenforceable. *Id*. at 7-8. Moreover, the Court held that the terms of use Topstep sought to enforce were, in effect, a broad noncompete that was "likely against public policy and so unenforceable." *Id*. at 9-10. The Court further held that, in view of the fact that Topstep sought "the complete shutdown of OneUp Trader's business – a serious harm indeed should the Court grant the request," the "balance of equities [wa]s inadequate to support the issuance of a TRO." *Id.* at 14-15.

On September 11, 2017, Topstep filed a First Amended Complaint (Dkt. No. 24) adding Mr. Alsabah as a defendant and asserting new claims for fraud and violation of the Computer Fraud and Abuse Act. OneUp filed a motion to dismiss on September 25, 2017. Dkt. Nos. 26, 27. Instead of responding, Topstep sought leave to file another complaint, which the Court granted on October 4, 2017 (Dkt. No. 32). The SAC (Dkt. No. 33) drops the CFAA claim and adds a

4

claim for unjust enrichment. On October 27, 2017, OneUp filed a Motion to Dismiss the SAC for failure to state a claim. Dkt. Nos. 35, 36. On November 14, 2017, Topstep served Mr. Alsabah.

The SAC expressly acknowledges that Mr. Alsabah "is an individual residing in Kuwait City, Kuwait." SAC ¶ 3. Mr. Alsabah is also a citizen of Kuwait. Exh. B ¶ 2. He does not own any personal, real property in the state of Illinois; nor has he ever transacted business in Illinois in his individual capacity. *Id.* ¶¶ 4, 8. As noted, while Topstep asserts that "[i]n or about September 2015, OneUp, at least through Alsabah, accessed TST's Website and agreed to be bound by the terms and conditions of the Original TOU" (SAC ¶ 38), which contained an Illinois forum-selection clause (*id.* ¶ 8), Topstep does not allege that Mr. Alsabah ever clicked to accept any terms. This is in marked contrast to paragraph 39 of the SAC, which alleges that, in 2016 and 2017, "OneUp accessed TST's Website and accepted the TOU by clicking on the box next to the words 'Please Accept Terms of Use.'" SAC ¶ 39.

## III. ARGUMENT

### A. Topstep's Claims Should Be Dismissed Under Fed. R. Civ. P. 12(b)(2)

Personal jurisdiction refers to a court's "power to bring a person into its adjudicative process." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Where "a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a prima facie case that jurisdiction exists." *Chopra v. Naik*, 16-cv-10262, 2017 WL 4339804, at *2 (N.D. Ill. September 30, 2017). Moreover, "when a defendant submits affidavits or other evidence in opposition to personal jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence in support of jurisdiction." *Id.* Here, Topstep makes no factual allegations to support this Court's exercise of personal jurisdiction over Mr. Alsabah, a citizen and resident of Kuwait. Furthermore, Mr. Alsabah's declaration and the testimony and evidence from the TRO hearing

5

confirm that no such facts exist.

Because there is no "operative difference" between the Illinois long-arm statute and the Due Process Clause, two constitutional limits, Illinois courts generally limit their analyses to whether exercising personal jurisdiction comports with the Due Process Clause. *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1046-47 (N.D. Ill. 2015). The Supreme Court has identified two categories of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). General jurisdiction may be exercised only where a defendant maintains "continuous and systematic contacts" with the forum state such that it is "essentially at home" in that state. *Id*. at 751. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 760. In contrast, specific jurisdiction exists where claims "arise out of or relate to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n.8 (1984).

### 1. The Court does not have general jurisdiction over Mr. Alsabah

Unlike specific jurisdiction, general jurisdiction allows a defendant to be sued in the forum "regardless of the subject matter of the litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). The consequences of general jurisdiction "can be severe," as a defendant may be called into court "to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 426 (7th Cir. 2010). This is a particularly important consideration where, as here, the defendant is a foreign national. For this reason, the constitutional requirement for general jurisdiction is very stringent and limited only to situations in which the defendant is "essentially at home" in the forum state. *Siswanto v. Airbus Americas, Inc.*, 15-CV-5486, 2016 WL 7178459, at *4 (N.D. Ill. Dec. 9, 2016).

There can be no question that this Court lacks general jurisdiction over Mr. Alsabah.

First, Topstep admits that Mr. Alsabah is a resident of Kuwait (SAC ¶ 3), and Mr. Alsabah confirms in his declaration that he is also a Kuwaiti citizen (Exh. B ¶ 2). Domicile, the "paradigmatic" condition for exercising general jurisdiction over Mr. Alsabah, is plainly lacking—and for this reason alone, the Court should decline to exercise general jurisdiction over him. *See, e.g., Curry v. Revolution Labs., LLC,* 17 C 2283, 2017 WL 3520955, at *4 (N.D. Ill. Aug. 15, 2017) (court lacked general jurisdiction over individual defendants where neither was domiciled in Illinois). Furthermore, Mr. Alsabah maintains no continuous and systematic contacts with Illinois. Topstep fails to allege any such contacts, and Mr. Alsabah makes clear in his declaration that he does not and has never owned any personal real property in Illinois (Exh. B ¶ 4), that he has never opened a bank account in Illinois (*id.* ¶ 5), and that he only traveled to Illinois once in the five years before the FAC was filed (*id.* ¶ 7).

### 2. The Court does not have specific jurisdiction over Mr. Alsabah

Specific personal jurisdiction "is a claim-specific inquiry," and "a plaintiff bringing multiple claims must establish specific jurisdiction for each claim." *My Canary LLC v. Cessna Aircraft Co.,* 16 CV 4000, 2017 WL 201373, at *2 (N.D. Ill. Jan. 18, 2017). Here, Topstep has also failed to plead facts sufficient to demonstrate that this Court can exercise specific personal jurisdiction over Mr. Alsabah in Illinois over any of its claims.

Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The purposeful availment requirement ensures that jurisdiction is not based on "random, fortuitous, or attenuated contacts," but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue. *Id.* at 475. Indeed, the defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to

7

anticipate that he could be haled into court in that state. *Id.* at 474.

Here, Topstep alleges no facts to show that Mr. Alsabah purposefully directed his activities at Illinois. Rather, OneUp makes ***only one*** specific allegation regarding Mr. Alsabah's conduct that is at all relevant to its claims: "[i]n or about September 2015, OneUp, at least through Alsabah, accessed TST's Website and agreed to be bound by the terms and conditions of the Original TOU." SAC ¶ 38. It is on the basis of these terms, and the forum selection clause contained therein, that Topstep asserts that "Defendants . . . consented to the exclusive jurisdiction before this Court in connection with any action arising out of or related to the contract at issue or its subject matter, as well as Defendants' wrongful conduct identified herein and they waived any objection based on lack of personal jurisdiction." SAC ¶ 8. But, for the reasons below, Topstep's terms of use are unenforceable and cannot be relied upon to confer jurisdiction over Mr. Alsabah with respect to its contract-related claims.

First, Topstep has alleged no facts to show that Mr. Alsabah and Topstep ever exchanged consideration in support of Topstep's terms of use, and in fact he received none. As demonstrated at the TRO hearing, the entire website has been available for anyone in the world to view without accepting any terms of use. *See* Exh. A, https://www.youtube.com/watch?time_continue=4&v=kpdBFSSBWfk (at approximately 3 minutes and 20 seconds, Conor Meegan, VP of business development at Topstep (Exh. G, https://www.linkedin.com/in/conormeegan/), says: "I'd like to go right through our website"); *see also* Exh. F, Hearing Tr. at 154-55 (Rudman confirming that website content is publicly available on YouTube). Accordingly, even if Mr. Alsabah had accepted the terms, he received no consideration for doing so, which renders the terms of use void. *Bires v. WalTom, LLC*, 662 F. Supp. 2d 1019, 1039 (N.D. Ill. 2009) (contract is void without consideration).

Second, the terms of use for Topstep's website in September 2015 constitute an unenforceable browsewrap agreement. *See* Exh. F, Hearing Tr. at 129:23-130:1; *see also* Exh. D. Indeed, in its opinion denying the motion for a TRO, the Court highlighted the crucial distinction between clickwrap and browsewrap agreements. The former "is formed when website users click a button that indicates that users 'agree or accept' to terms of an agreement upon viewing its terms posted on the website." Mem. Op. at 6 (quoting *Sgouros v. TransUnion Corp.*, 14 C 1850, 2015 WL 507584, at *4 (N.D. Ill. Feb. 5, 2015)). These types of agreements are "usually enforce[d] . . . because [they] require[] users to take affirmative action to manifest assent by clicking a button or a checkbox which accompanies a statement instructing users that their click would constitute their assent to the terms at issue." Mem. Op. at 7 (quoting *Sgouros*, 2015 WL 507584, at *4). By contrast, browsewrap agreements—which "do not require the user to manifest assent to the terms and conditions expressly" but instead "typically involve a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions"—are far less likely to be enforced. Mem. Op. at 7 (quoting *Van Tassell v. United Mktg.*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). Their enforceability "depends upon whether there is evidence that the user has actual or constructive notice of the site's terms." Mem. Op. at 7-8 (quoting *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 731 (N.D. Ill. 2017)).

In denying Topstep's motion for a TRO, the Court emphasized that, to demonstrate the existence of an enforceable contract, "Alsabah's click . . . is important" and that, "[w]ithout this click, all TopStepTrader has is a 'browsewrap' agreement" which is not likely to be enforced. Mem. Op. at 7-8. Presumably referring to the sign-up page featured in Exhibit D—which is the one Mr. Rudman testified was in place at the time Mr. Alsabah accessed the website—the Court stated that it would be "too much to ask [that the] inconspicuous and 'submerged' hyperlink" put

9

anyone "on notice that it was assenting to those terms by accessing the website." *Id.* at 8.

In light of this Court's thorough explanation of the difference between browsewrap and clickwrap agreements, one would have expected Topstep to have alleged that Mr. Alsabah clicked *something* back in 2015, if that were true. Tellingly, Topstep alleges only that Mr. Alsabah "accessed TST's Website and agreed to be bound by the terms and conditions of the Original TOU." SAC ¶ 38. This contrasts with the following paragraph, wherein Topstep alleges that "[i]n or about Fall 2016 and Spring of 2017, *OneUp* accessed TST's Website and accepted the TOU *by clicking* on the box next to the words 'Please Accept Terms of Use.'" *Id.* ¶ 39 (emphasis added). Because Topstep has not alleged that Mr. Alsabah encountered anything but an unenforceable browsewrap agreement, it cannot demonstrate that he should be held to any forum-selection clause contained therein.

Moreover, simply accessing Topstep's website and providing Topstep with an email address—which is the only conduct Topstep attributes to Mr. Alsabah—does not constitute "purposeful availment" of Illinois such that Mr. Alsabah could anticipate being haled into the state for claims of copyright infringement, breach of contract, unjust enrichment, or fraud. *Burger King,* 471 U.S. at 475 (jurisdiction cannot be based on "random, fortuitous, or attenuated contacts"; contacts must show real relationship with the state with respect to the claims at issue).

Topstep's SAC is devoid of factual allegations demonstrating that this Court can exercise specific personal jurisdiction over Mr. Alsabah with respect to any of its claims.

> 3. **Neither OneUp's Contacts nor Its Conduct Can Be Attributed to Mr. Alsabah Under an Alter Ego Theory**

Presumably, OneUp is hoping to argue that the Court has personal jurisdiction over Mr. Alsabah because OneUp's alleged contacts and conduct can be attributed to him under an "alter ego" theory. But for such a theory to be possible, Topstep would have had to have pled specific

facts in support of it. Instead, all Topstep pleads is the conclusory allegation that OneUp "in the alternative" is Mr. Alsabah's alter ego. SAC ¶ 36. Without facts supporting such a theory, neither OneUp's contacts nor its conduct can be attributed to Mr. Alsabah. *Dissolved Air Floatation Corp. v. Kothari*, 14-c-1223, 2016 WL 5376192, at *3 (E.D. Wis. Sept. 26, 2016) ("the contacts of the [corporate] entity may be attributed to those of the individual defendant" only if circumstances exist to justify piercing the veil).

"When determining whether to pierce the corporate veil, a court applies the law of the state of incorporation" of the corporate entity at issue. *Caccamo v. Greenmarine Holdings LLC*, 01 C 0899, 2002 WL 1466818, at *4 (N.D. Ill. July 8, 2002); *see also In re Glick*, 568 B.R. 634, 660 (Bankr. N.D. Ill. 2017) (explaining that federal common law and Illinois law "both apply the law of the state of incorporation to requests to pierce the corporate veil"). Here, OneUp is a Delaware corporation; therefore, Delaware law applies. By all metrics, "Delaware has an exceptionally strong policy of respecting the corporate form." *In re ALT Hotel, LLC*, 479 B.R. 781, 802 (Bankr. N.D. Ill. 2012) (citing *Alliance Data Sys. Corp. v. Blackstone Capital Pts. V.L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009)). As the Delaware Court of Chancery has cautioned, "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task." *Yu v. GSM Nation, LLC*, CV 12293, 2017 WL 2889515, at *3 (Del. Ch. July 7, 2017).

Because Delaware public policy "does not lightly disregard the separate legal existence of corporations, a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *Doberstein*, 2015 WL 6606484, at *4. Rather, a plaintiff must plead facts supporting the conclusion that "the corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud." *In re Sunstates*, 788 A.2d at 534. Indeed, "the case law governing veil-piercing

requires [a court] to consider whether the individual defendant . . . abused the corporate form and, through that abuse, perpetrated fraud on an innocent third party." *Doberstein*, 2015 WL 6606484, at *4. At the pleading stage, the plaintiff must plead facts supporting the conclusion that the individual defendant's "wrongful acts [are] tied to the manipulation of the corporate form in order to make veil-piercing justifiable on grounds of equity." *Id.*

Here, Topstep's single, conclusory allegation that, "[a]lternatively, OneUp Trader LLC is the alter ego of Alsabah" (SAC ¶ 36) is insufficient to justify disregarding OneUp's separate legal existence under Delaware law. *Doberstein*, 2015 WL 6606484, at *4; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a properly pled complaint requires far more than mere "labels and conclusions"). Topstep does not allege that OneUp is a "sham" corporation that "exist[s] for no other purpose than as a vehicle for fraud" or that Mr. Alsabah "abused" or "manipulate[ed] the corporate form" in any way. *See Doberstein*, 2015 WL 6606484, at *4. "Delaware courts will allow the corporate veil to be pierced only under the most exceptional of circumstances"—and allegations of such exceptional circumstances are entirely absent from Topstep's SAC. *Heyman v. Beatrice Co.*, 89-c-7381, 1995 WL 151872, at *7 (N.D. Ill. 1995); *Caccamo*, 2002 WL 1466818, at *4-5 (declining to pierce corporate veil where there were "no allegations of fraud" or that "corporate funds [were siphoned or] corporate formalities were not followed"). Accordingly, Topstep cannot establish personal jurisdiction based on an alter ego theory.

### B. Even if the Court had Personal Jurisdiction Over Mr. Alsabah, Topstep's Claims Against Him Should Be Dismissed for Failure to State a Claim

Under the well-settled *Iqbal-Twombly* pleading standard, to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must draw reasonable inferences in favor of the non-

moving party, a properly pled complaint requires more than mere "labels and conclusions." *Id.* That is, while courts "must accept as true all of the [material factual] allegations contained in a complaint," they need not accept legal assertions included therein. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Tierney v. Advoc. Health and Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015). Applying this standard, Topstep's pleading against Mr. Alsabah cannot survive.

Topstep's SAC references Mr. Alsabah only a handful of times—and nowhere in any of its four counts. The only allegation specifically identifying conduct by Mr. Alsabah relevant to Topstep's claims is that "[i]n or about September 2015, OneUp, at least through Alsabah, accessed TST's Website and agreed to be bound by the terms and conditions of the Original TOU." SAC ¶ 38. But, for the reasons discussed in Section III.A.2. above, Topstep has not plausibly alleged that Mr. Alsabah entered an enforceable contract in the first place. Moreover, even if Mr. Alsabah had entered into an enforceable contract, Topstep's single allegation of conduct is insufficient to satisfy even the most basic elements of any of its four claims. And because Topstep has not plausibly alleged that OneUp is Mr. Alsabah's alter ego, none of OneUp's alleged conduct can be attributed to Mr. Alsabah. *See Doberstein*, 2015 WL 6606484, at *4. The SAC must therefore be dismissed against Mr. Alsabah under Rule 12(b)(6).

With regard to its claim for copyright infringement (Count I), Topstep was required to "plausibly allege that (1) the plaintiff owns a valid copyright; and (2) the defendant copied constituent elements of the work that are original." *Joint Commn. on Accreditation of Healthcare Orgs. v. Greeley Co.,* 14 C 10225, 2016 WL 1450051, at *3 (N.D. Ill. Apr. 13, 2016). This claim fails at the outset because Topstep does not allege that Mr. Alsabah ever copied anything or otherwise participated in any infringement. *See Live Face on Web, LLC v. Kam Dev., LLC*, 16 C

8604, 2016 WL 7374279, at *5 (N.D. Ill. Dec. 20, 2016) (dismissing copyright infringement claim where the "[c]omplaint lacks sufficient factual allegations that [the individual defendant]: (i) personally participated in the alleged copying of [the plaintiff's] software; (ii) used [the corporation for which she was an officer] as an instrument to carry out [her] own willful and deliberate infringements; or (iii) used [the corporation] to conduct the infringement with the purpose of avoiding personal liability for copyright infringement."). Moreover, as addressed on pages 5-9 of OneUp's Memo in Support of Its Motion to Dismiss the SAC, incorporated herein by reference, Topstep has only alleged that OneUp copied a handful of insignificant snippets from the Rules, Help, and FAQ sections of its website—totaling less than one-third of one percent of the work. Dkt. No. 36 at 5-9; *see also* SAC Exh. A, I. As a matter of law, this is insufficient to state a claim for copyright infringement, which requires that "the violative work . . . infringe upon a substantial portion of the plaintiff's work." *Greeley*, 2016 WL 1450051, at *3.

As for its breach of contract claim (Count II), Topstep was required to allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). This claim also fails at the outset because Topstep has not plausibly alleged that Mr. Alsabah entered into an enforceable contract, or that Mr. Alsabah breached any such contract. As addressed in Section III.A.2 above, Topstep has alleged no facts to show that Mr. Alsabah received consideration in exchange for accepting Topstep's terms of use, and those terms of use constitute an unenforceable browsewrap agreement. Furthermore, as addressed on pages 10-15 of OneUp's Memo in Support of Its Motion to Dismiss, incorporated herein by reference, the terms of use also amount to an unenforceable restrictive covenant. *See* Dkt. No. 36 at 10-15.

With regard to unjust enrichment (Count III), Topstep had to "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1015 (N.D. Ill. 2009). Once again, Topstep's claim is deficient, as Topstep does not allege that Mr. Alsabah ever received any specific benefit to its detriment.

Finally, to plead common law fraud (Count IV), Topstep was required to allege with particularity that (1) Mr. Alsabah made a false statement of material fact; (2) Mr. Alsabah had knowledge that the statement was false; (3) Mr. Alsabah intended the statement to induce Topstep to act; (4) Topstep did act in reliance upon the statement; and (5) Topstep suffered damages resulting from its reliance. *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013). Topstep's claim fails because it never specifically alleges that Mr. Alsabah made a false statement of material fact with the intent to induce Topstep to rely on that statement. Furthermore, to extent that Topstep is implying that by "access[ing] TST's Website and agree[ing] to be bound by the terms and conditions of the Original TOU" (SAC ¶ 38), Mr. Alsabah made some sort of false promise to abide by those terms, this claim is deficient as a matter of law. In Illinois, "misrepresenting an intention to perform future conduct, even if made without a present intention to perform, does not constitute fraud." *Jada Toys, Inc. v. Chicago Import, Inc.*, 07C699, 2008 WL 1722140, at *1 (N.D. Ill. Apr. 10, 2008); *see also* OneUp's Memo in Support of Its Motion to Dismiss the SAC, Dkt. No. 36 at 17-19.

## IV. CONCLUSION

For the foregoing reasons, the SAC should be dismissed for lack of personal jurisdiction and failure to state a claim against Mr. Alsabah. And, because this is Topstep's third attempt at a viable complaint, it clearly lacks the facts needed to establish personal jurisdiction or to state a claim against him. Accordingly, the SAC must be dismissed with prejudice.

Dated: December 5, 2017					SATTAM ALSABAH


							By: <u>David J. Wolfsohn</u>
							David J. Wolfsohn (*admitted pro hac vice*)
							djwolfsohn@duanemorris.com
							DUANE MORRIS LLP
							30 S. 17th Street
							Philadelphia, PA 19103
							Phone: (215) 979-1000
							Fax:    (215) 979-1020

							*Attorney for Defendants OneUp Trader, LLC and Sattam Alsabah*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2017, I caused a true and correct copy of the foregoing document to be served via CM/ECF on the below counsel of record:

>Brian T. Noack, Esquire
>Adam Wolek, Esquire
>Taft Stegginius & Hollister, LLP
>111 East Wacker Drive, Suite 2800
>Chicago, IL 60601
>
>Sanna-Rae Taylor, Esquire
>Taft Stettinius & Hollister LLP
>425 Walnut Street, Suite 1800
>Cincinnati, OH 45202

>/s/ David J. Wolfsohn
>David J. Wolfsohn