**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOPSTEPTRADER, LLC, ) | |
| ) | |
| ) | Case Number 17-cv-4412 |
| Plaintiff, ) | |
| ) | Judge: Hon. Harry D. Leinenweber |
| v. ) | |
| ) | |
| ONEUP TRADER, LLC and SATTAM ) | |
| ALSABAH, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT ONEUP TRADER, LLC'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF TOPSTEPTRADER, LLC'S SECOND**
**<u>AMENDED COMPLAINT</u>**

David J. Wolfsohn (*admitted pro hac vice*)
djwolfsohn@duanemorris.com
Julie M. Latsko (*admitted pro hac vice*)
jmlatsko@duanemorris.com
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax:    (215) 979-1020

*Attorneys for Defendants OneUp Trader,*
*LLC and Sattam Alsabah*

The lynchpin of Topstep's brief is its reliance upon the incorrect motion-to-dismiss standard. Topstep urges the Court not to dismiss the Second Amended Complaint because it provides "minimal notice of the claim[s]" asserted and because, Topstep argues, complaints should be dismissed "only if it is clear that no relief is possible under any set of facts that could be established consistent with the allegations." Topstep Br. at 2, quoting *Tome Engenharia E. Transporrtes, Ltd. v. Malki*, No. 94C7427, 1996 WL 172286, at *3 (N.D. Ill. Apr. 11, 1996) and *Gelco Corp. v. Duval Motor Co*., No. 02C5613, 2002 WL 31875537, at *7 (N.D. Ill. Dec. 26, 2002). But more than a decade ago, the Supreme Court's *Iqbal* and *Twombly* decisions made it clear that it was no longer sufficient for a plaintiff merely to provide "minimal notice" of its claims, and those cases did away with *Conley v. Gibson*'s "no set of facts" standard. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (*Twombly* retired the *Conley* standard that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief; "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8"); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 777 (7th Cir. 2007) (cases espousing the *Conley* "no set of facts" standard "are no longer valid" in light of *Twombly*).

The "minimal notice" and "no set of facts" standards have gone the way of the dinosaurs. Instead, a complaint should be dismissed if it does not plead facts supporting plausible claims. *Killingsworth*, 507 F.3d at 618-19 (plaintiff must plead more than labels and conclusions; formulaic recitation of elements of cause of action will not do; complaint must contain enough facts to state a claim to relief that is plausible on its face); *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1076 (N.D. Ill. 2015) (Leinenweber, J.) (complaint must contain enough facts to state

claims plausible on their face; factual allegations must show that the claim has "substantive plausibility"). Topstep's Second Amended Complaint fails to do that and Topstep invites the Court to commit legal error by espousing the pre-*Iqbal/Twombly* standard.[1]

**I.  Topstep's Copyright Claim Must Be Dismissed with Prejudice Because Topstep Has Failed to Allege Substantial Similarity as a Matter of Law**

OneUp's opening brief pointed out that only three sentences in the 309 pages of Topstep's website contained any word overlap, plus four short industry-standard phrases. Only one of these sentences is identical and the three sentences in question—Topstep's "trade a minimum of 15 days" versus OneUp's "trade a minimum of 10 days"; Topstep's "Trade permitted products and times" versus OneUp's "Only trade during permitted times"; and both parties' "Do not hit or exceed the Daily Loss Limit"—use a total of *seventeen words* in common. The four short industry terms—"Max Position Size," "Daily Loss Limit," "Max Drawdown," and "Profit Target" total *ten words*. That's a grand total of 27 words found in three sentences and four industry trading terms in a website of 309 pages. These sentences and industry terms are repeated four times in Topstep's website. Multiplying 27 times four yields a total of 108 allegedly infringing words. This compares with a total word count in Topstep's website of well over *31,000*.[2] So even if the three sentences and four industry terms were copyrightable (and OneUp's opening brief explained that at least the industry terms are not), that would be about

---

[1] *Tome Engenharia,* 1996 WL 172286, at *3, relied upon the pre-*Twombly* Seventh Circuit case *Bartholet v. Rieshauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992), which relied upon *Conley v. Gibson*, 355 U.S. 41 (1957).

[2] The undersigned counsel converted the PDF version of the website attached to the Second Amended Complaint as Exhibit A to Word and then used Word's "word count" function to count the words in the website. Words shows a word count of 36,470, but that includes the ECF legend on each page. That legend contains 17 words. 17 X 309 = 5,253. 36,470 – 5,253 = 31,217. This methodology actually undercounts the total number of words in the website because Word does not recognize as separate words some of the text-containing objects in the Word conversion, such as the ones found at the top of page one and toward the bottom of page two.

one-third of one percent of the text in Topstep's website that overlaps in terms of word choice with OneUp's website (108 ÷ 31,000 = .00348).

OneUp's brief pointed out that the relevant case law holds that such a tiny smattering of overlapping verbiage does not, as a matter of law, meet the "substantial similarity" test to be conducted on a motion to dismiss. *Joint Commn. on Accreditation of Healthcare Orgs. v. Greeley Co.*, 14 C 10225, 2016 WL 1450051 (N.D. Ill. Apr. 13, 2016) is directly on point. In *Greeley*, the plaintiff claimed that its work was substantially similar to the defendant's work because two paragraphs out of 742 pages were identical and one page contained mainly paraphrased text. 2016 WL 1450051, at *7. The court ruled on defendant's motion to dismiss for failure to state a claim that "[t]hese allegations fall well short of plausibly alleging substantial similarity" between the two works. *Id.* The court explained as follows: "Such minimal degree of duplication is not a reproduction of a substantial portion of the plaintiffs' work and the complaint, thus, fails to satisfy the plaintiffs' obligation under Rule 8 to plausibly allege infringement of their copyright in the" plaintiffs' work. *Id.*

Topstep's brief completely ignores *Greeley,* not even attempting to distinguish it, and Topstep ignores as well the other cases discussed in OneUp's brief in which much larger percentages of overlap were held to be quantitatively or qualitatively insufficient as a matter of law. *See, e.g., Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc.*, 639 F. Supp. 2d 1356, 1362 (S.D. Fla. 2009) (defendant's three-page websites, even if they were similar to the plaintiff's site, were too insignificant a portion of defendant's 43-page website to be substantially similar); *Peters v. West,* 776 F. Supp. 2d 742, 751–52 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (defendant's song was not substantially similar to plaintiff's song where "[t]he only smaller fragments that are copied literally are the words 'don't kill me make me stronger,'

'wronger,' 'wait no longer,' and 'Kate Moss,' which do not have readily recognizable qualitative significance in relation to the plaintiff's work as a whole"). Indeed, Topstep fails to assert that the alleged infringement either qualitatively or quantitatively meets the "substantial similarity" standard.

Ignoring this case law, Topstep relies exclusively on cases in which it was undisputed that the defendant had copied "constituent elements of the work that are original" or in which the court found that there were "overwhelming similarities" between the works *as a whole*. *Muhammad-Ali v. Final Call, Inc*., 832 F.3d 755, 760 (7th Cir. 2016) ("*No one disputes* that Ali proved both of these," i.e., "ownership of a valid copyright" and "copying of constituent elements of the work that are original.") (emphasis supplied); *JCW Invs., Inc. v. Novelty, Inc*., 222 F. Supp. 2d 1030, 1034 (N.D. Ill. 2002) (in granting preliminary injunction, district court finds that there are "overwhelming similarities" between the works as a whole); *Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*, No. 12C10275, 2013 WL 4011052, at *3 (N.D. Ill. Aug 6, 2013) (complaint alleges that "defendants have, without authorization, rebroadcast . . . the *entire content*" of plaintiff's work) (emphasis supplied).

Here, we know *from Topstep's own allegations* that only a tiny portion of the website was allegedly copied, in particular what is shown in Exhibits F and I. *See* SAC ¶ 54 (referring to Exhibit F to the SAC as showing "numerous graphs and tables [on OneUp's website] with either no change or de minimis changes as compared to TST's website"); ¶ 66 ("Website comparison showing substantially similar content [is] at Exh. I."); *compar*e SAC ¶ 52 (referring to copying of *trademark*s, not *copyrighted* content shown in Exhibit E to the SAC). But the only alleged

copying of Topstep's website that is evident in Exhibits F and I is the three sentences and four industry terms discussed at length above.

To be sure, in its brief, Topstep points to various other allegations in the Second Amended Complaint, but these "mere labels and conclusions" are insufficient under the *Iqbal/Twombly* standard and, in any event, actually undermine Topstep's position. Topstep Br. at pp. 4-5. Topstep first refers to paragraphs 9 through 18 of the SAC, but those paragraphs refer to things other than the website that Topstep registered with the Copyright Office such as "novel software" (¶ 9) the "Trading Combine" (¶ 11), and "patent pending technology" (¶ 12), so they are obviously outside of the copyright claim. A printout of the website—which is the only thing Topstep registered and therefore the only thing Topstep can claim is infringed—is attached to the SAC as Exhibit A, and the Court can readily observe that Exhibit A contains no "software," no "patent pending technology," and no "Trading Combine." Topstep also alleges that OneUp used Topstep's "process[es]" (¶¶ 46, 50) and business "methods" (¶ 48)—things that are not protectable under the Copyright Act. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, *process*, system, *method* of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.") (emphasis supplied). These allegations therefore undermine Topstep's claim that *protectable* elements of the website were supposedly infringed. *Culver Franchising Sys., Inc. v. Steak N Shake Inc.*, 16 C 72, 2016 WL 4158957, at *4 (N.D. Ill. Aug. 5, 2016) (court must "first identify which aspects of the plaintiff's work, if any, are protectable by copyright").

Topstep also argues that graphs and tables in the two works are similar, but the visual comparison of OneUp's and Topstep's content speaks for itself. In any event, Topstep fails to

inform the Court that it owns no copyright in any charts or graphs in its website since the Copyright Office refused to include "charts and graphs" in the copyright registration associated with Topstep's website. *See* Topstep's June 19, 2017 and July 6, 2017 correspondence with the Copyright Office, attached hereto as Exh. A. Accordingly, to the extent that Topstep is relying on purported similarity of processes, methods, charts, or graphs—things in which it owns no copyright—it has "pled [itself] out of court by pleading facts that undermine the allegations set forth in the complaint." *Wagner v. McCann*, 10 C 2160, 2011 WL 3205352, at *1 (N.D. Ill. July 27, 2011) (Leinenweber, J.).

When a defendant files a Rule 12(b)(6) motion with respect to a copyright claim, the Court should compare the works side by side as they appear as exhibits to the complaint. *Culver*, 2016 WL 4158957, at *1, *9 (dismissing copyright claim with prejudice because "repleading would appear futile because the fatal flaw in [plaintiff's] case—that the two commercials are not substantially similar as a matter of law—cannot be cured by amendment"); *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (affirming district court's dismissal of copyright claim on a motion to dismiss where comparison of lyrics of songs showed they were not substantially similar, notwithstanding plaintiff's characterization of defendant's song as "similar" and therefore "copyright infringement"); *Theotokatos v. Sara Lee Personal Prods.*, 971 F. Supp. 332, 340–41 (N.D. Ill. 1997) ("Where, as here, both the protected and accused works are attached to the complaint, a court may compare the works and determine as a matter of law whether they are substantially similar with respect to copyrightable material. . . . In making such a comparison the works themselves supersede and control any contrary allegations, conclusions or descriptions of

the works as contained in the pleadings."). As a matter of law, the two websites are not

substantially similar.[3]

**II.      Topstep's Breach of Contract Claim Must Be Dismissed with Prejudice Because Topstep Has Not Plausibly Alleged That OneUp Entered into a Valid, Enforceable Contract**

   **A.      As a Matter of Law, OneUp Did not Accept the Terms of Use Because Alsabah's Alleged 2015 Conduct Cannot Be Attributed to OneUp, which Was Founded in 2017**

OneUp's brief pointed out that Topstep's contract claim was implausible because it does

not allege that Alsabah's conduct in 2015 "could bind OneUp Trader in 2017." OneUp Br. at 10,

quoting June 28, 2017 Mem. Op., Dkt. No. 17, at p. 8. Topstep concedes that OneUp was not

incorporated until 2 years after the alleged conduct by Mr. Alsabah that Topstep argues

constitutes acceptance of the terms of use. Topstep Br. at p. 8 ("Mr. Alsabah strategically waited

to formally incorporate OneUp until 2017."). Topstep argues, however, that it has "properly

allege[d]" that Alsabah is the alter ego of OneUp. *Id.* Not surprisingly, Topstep's sole authority

for this proposition—*Kellers Systems, Inc. v. Transport International Pool, Inc.*—is a pre-*Iqbal-*

*Twombly* case that relies heavily on *Conley's* articulation of the now-defunct "no set of facts"

pleading standard. 172 F. Supp. 2d 992, 997, 999-1000 (N.D. Ill. 2001). As addressed above,

such "minimal notice" is no longer sufficient to state a claim in federal court. Moreover, unlike

Topstep's conclusory allegation that OneUp "is the alter ego of Alsabah" (SAC ¶ 36), the

---

[3] Topstep's argument that it needs discovery to be able to allege facts supporting its claim is frivolous. Topstep Br. at p. 6. Topstep has attached a printout of its website to the SAC and also attached the portions of OneUp's website it asserts are infringing. As the court put it in *Greeley Co.*: "It is unclear what additional information the plaintiffs expect to uncover in discovery; they have access to the text of their work and to the text of the defendants' publications. They are as able to compare the entirety of the works and identify any additional infringing portions now as they would be after discovery." 2016 WL 1450051, at *8 n.9.

claimant in *Kellers* explicitly alleged that the two entities "used . . . accounts interchangeably and commingled the assets." 172 F. Supp. 2d at 1001.

*Kellers* is further distinguishable because the court applied Illinois law to the veil-piercing claim. 172 F. Supp. 2d at 999-1000 ("Illinois follows the internal affairs doctrine as its choice-of-law principle in cases alleging impropriety of corporate governance. Under the internal affairs doctrine the substantive law of the state of incorporation governs."). Here, there is no dispute that OneUp is a Delaware corporation. As addressed in detail in Mr. Alsabah's Motions to Dismiss (Dkt. No. 49), Delaware law is clear that "a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *Doberstein v. G-P Indus., Inc.*, CV 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015). Rather, for such a theory to be viable, Topstep was required to plead facts showing that "the corporation [is] a sham and exist[s] for ***no other purpose*** than as a vehicle for fraud." *In re Sunstates Corp. Shareholder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) (emphasis added). Topstep's single, conclusory allegation falls far short.

In an alternate attempt to impute Mr. Alsabah's 2015 conduct to OneUp, Topstep cites a 1991 Illinois state court case for the proposition that "a company who acquires the assets of its predecessor and continues as a mere continuation of a seller, may be liable as a successor in interest." Topstep Br. at 8 (citing *Sinquefield v. Sears Roebuck & Co.*, 568 N.E.2d 325, 327 n.1 (Ill. App. Ct. 1991)). Not only is this argument a complete non sequitur—as Mr. Alsabah is an individual, not a corporation, and Topstep has not alleged that OneUp acquired Mr. Alsabah's individual assets or exists as a "mere continuation" of Mr. Alsabah—but it does not accurately reflect the decision on which Topstep purports to rely. That decision, *Sinquefield v. Sears Roebuck & Co.*, explicitly states that "[g]enerally, when one corporation sells its assets to

another corporation, the seller's liabilities ***do not*** become a part of the successor corporation."

568 N.E.2d at 327 (emphasis added). While the court acknowledged potential exceptions,

Topstep has not alleged that any of those exceptions exist in this case. Topstep has not plausibly

alleged that Mr. Alsabah's 2015 conduct can be attributed to OneUp, and it is not entitled to

discovery to cure its woefully deficient pleading.

### B. Topstep's Terms of Use Are Unenforceable as a Matter of Law

With regard to the confidentiality provisions, OneUp emphasized in its opening brief that

confidentiality agreements are only enforceable if the information "sought to be protected is

actually confidential and reasonable efforts were made to keep it confidential"—and that Topstep

has not plausibly alleged that any such materials exist. OneUp Br. at 12 (quoting *Tax Track Sys.*

*Corp. v. New Investor World, Inc*., 478 F.3d 783, 787 (7th Cir. 2007)). Topstep completely

ignores this point, failing to identify any confidential information that was misappropriated by

OneUp. That is not surprising—any such claim would be implausible because the website, which

is attached to the SAC, is publicly available. Indeed, nowhere in Exhibit A to the SAC is the

viewer required to accept Topstep's terms of use. Accordingly, any purported agreement to abide

by the confidentiality terms of use would lack consideration, since the person agreeing to them

would be getting nothing more than what every other Internet user can get without any such

obligation. Because Topstep has not plausibly alleged that the confidentiality terms are supported

by consideration, the terms are void as a matter of law. *See, e.g.*, *Bires v. WalTom, LLC*, 662 F.

Supp. 2d 1019, 1039 (N.D. Ill. 2009) ("the contract is null and void because it lacks

consideration").

Moreover, OneUp argued in its opening brief that the revised terms of use contains

confidentiality terms that were not present in the original—and that Topstep has failed to allege

that consideration was exchanged in support of those terms. *Compare* SAC Exh. C (Original

TOU), *with* SAC Exh. B (Revised TOU). While Topstep responds in its brief that it "provided additional consideration in the form of access to new information and content as well as new opportunities to use the system" (Topstep Br. at 9), Topstep's argument is not plausible. Nowhere in the Second Amended Complaint does Topstep specify what "new information and content" was provided to users in exchange for accepting the Revised TOU.

OneUp also argued in its opening brief that the restrictive covenant provisions of the terms of use are similarly unenforceable. Topstep now responds that "at no time has Topstep required users (or anyone) to refrain from competing with Topstep" (Topstep Br. at 10)—but that statement is directly contradicted by Topstep's characterization of these provisions in its First Amended Complaint. *See* FAC ¶ 31 ("The TOU Agreement also contains a restrictive covenant . . . ."). Moreover, Topstep's newfound interpretation is contradicted by the plain language of the Original and Revised TOU, as well as the allegations in Topstep's Second Amended Complaint (*see, e.g.*, SAC ¶ 82 ("OneUp also breached the TOU when OneUp violated the provision that states that a user 'shall not access or use for any commercial purposes any part of [TST's] Sites or Services.'"); ¶ 85 ("OneUp further breached the TOU when OneUp violated the provision that expressly forbids it to 'use [TST's] Sites or Services [of TST] to gain competitive intelligence about [TST] or the Sites or Services to compete with [TST] or its affiliates.'"). Topstep's terms of use *permit* the use of all information on the website as long as the user does not compete; only competitive use is prohibited.

Restrictive covenants must be supported by consideration, and nowhere in the SAC does Topstep allege what consideration OneUp received for allegedly agreeing to the noncompete. *ATC Healthcare Services, Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 960 (N.D. Ill. 2016) ("For a . . . non-compete clause to be enforceable in Illinois, it must be supported by adequate

consideration."). Indeed, it is implausible that OneUp could have gained anything in exchange for agreeing not to use Topstep's *publicly available* website content. OneUp pointed this out in its opening brief, yet Topstep effectively concedes this point by failing to address it. Because Topstep has not plausibly alleged that consideration was exchanged in support of this restraint, the terms are void and the "competitive intelligence"/restrictive covenant claims must be dismissed.

Furthermore, Topstep's brief ignores the fact that its restrictive covenant provisions are without any geographic or temporal limit—which renders them unenforceable as being against public policy. *Liautaud v. Liautaud*, 221 F.3d 981, 987-88 (7th Cir. 2000) (noting that Illinois courts "generally have refused to enforce noncompetition agreements that do not limit the duration of the restriction"). And, while it argues that "[p]rohibiting the kind of deceptive theft and misuse carried out by OneUp on Topstep's data, information, and other work is entirely enforceable by contract" (Topstep Br. at 10), Topstep conveniently fails to acknowledge that a covenant not to compete must secure a "protectable interest," like a trade secret (*Curtis 1000 v. Suess,* 843 F. Supp. 441, 446-47 (C.D. Ill. 1994))—and that it has not alleged misappropriation of anything that is not already available to everyone in the world. Topstep's silence on these issues is particularly telling, as the Court emphasized both defects during the TRO hearing and in its corresponding opinion. TRO Hearing Tr. at 188, attached hereto as Exh. B; *see also* June 28, 2017 Mem. Op., Dkt. No. 17 at 9-10.

C. **The Terms of Use Relating to Reproduction, Public Display, and Making Derivative Works Are Preempted by the Copyright Act**

In its opening brief, OneUp argued that "the terms of use cited in *paragraphs 81 and 83* [of the SAC] are also unenforceable because the rights they seek to enforce are equivalent to the exclusive rights within the general scope of copyright—limits on reproduction, public display,

and making derivative works—and they are therefore preempted under Section 310(a) of the Copyright Act." OneUp Br. at 15 (emphasis added). Inexplicably, Topstep responds by citing language from paragraphs 82, 84, and 85 of the Second Amended Complaint and concluding that "Topstep's breach of contract claim also seeks relief for conduct not recoverable under the copyright claim." Topstep Br. at 10-11. The terms and/or conduct in paragraphs 82, 84, and 85 are irrelevant—rather, it is the terms in paragraphs 81 and 83 that are preempted under Section 310(a) of the Copyright Act. Topstep does not and cannot explain how those two paragraphs seek to enforce anything other than the exclusive rights falling within the scope of the Copyright Act.

### III. Topstep's Unjust Enrichment Claim Must Be Dismissed with Prejudice Because Topstep Has Not Plausibly Alleged That OneUp Received and Retained Any Benefit

In its brief, Topstep states that it "pled unjust enrichment as an alternative" to its breach of contract claim and explains that "[u]njust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." Topstep Br. at 13 (quoting *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008)). But Topstep's strategy of "pleading in the alternative" does not cure its defective third complaint. Not only has Topstep failed to plausibly allege the existence of a valid contract to support its breach of contract claim, it has also failed to plausibly allege the requisite elements of unjust enrichment. Both claims must therefore be dismissed with prejudice.

To plead unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1015–16 (N.D. Ill. 2009). In its opening brief, OneUp stressed that Topstep has alleged no facts from which one could conclude that OneUp received and retained a

12

benefit "by accessing and using TST's Website content, software, services, business and proprietary information without paying for the same" (SAC ¶ 94). Indeed, such a benefit is implausible—as Topstep does not dispute that its website content is freely accessible by the general public and that it does not require agreement to terms of use or submission of a payment before viewing or otherwise using that content. In a transparent attempt to distract the Court from this fatal defect, Topstep's brief reiterates many of the vague and conclusory allegations contained in its unjust enrichment claim. For example, Topstep states that "Defendants have unfairly used [Topstep's] information in a manner that has and will continue to benefit itself [*sic*] in the investment industry and in a manner injurious to Topstep." Topstep Br. at 14. But reiterating conclusory allegations does not transform them into factual allegations sufficient to state a claim.

Furthermore, as argued in OneUp's brief—and ignored in Topstep's—to the extent that Topstep is alluding to some purported benefit related to OneUp's alleged copyright infringement, that claim is preempted by Section 301(a) of the Copyright Act.

## IV. Topstep's Fraud Claim Must Be Dismissed with Prejudice Because the Conduct Alleged Cannot Constitute Fraud

Topstep's fraud claim misses the mark for the straightforward reason that the conduct alleged is not fraud as a matter of law. As OneUp emphasized in its opening brief, "misrepresenting an intention to perform future conduct, even if made without a present intention to perform, does not constitute fraud" in Illinois. *Jada Toys, Inc. v. Chicago Import, Inc.*, 07C699, 2008 WL 1722140, at *1 (N.D. Ill. Apr. 10, 2008). In response, Topstep tries to make it appear that OneUp's alleged agreement to the terms of use is somehow something more than "misrepresenting an intention to perform future conduct," but this attempt falls flat.

13

Topstep's alleges a single false promise—i.e., that "OneUp knowingly made a misstatement of material fact to TST when, on or about September 13, 2015, OneUp expressed its false intention to abide by the terms of the Original and Revised TOU when OneUp accepted the terms of the Original TOU and set up a User Account on TST's Website." SAC ¶ 98. Now that OneUp has pointed out that the conduct alleged is insufficient to state a claim for fraud (OneUp Br. at 17-19), Topstep backpedals. Perplexingly, Topstep argues that the basis for its fraud claim is not that OneUp made "a false promise to perform at some time in the future," but that OneUp "perpetrated fraud by misrepresenting the purpose of logging into Topstep's Sites and Services and repeatedly and covertly gaining access to it for the sole purpose of harming Topstep." Topstep Br. at 13. This statement is a contradiction in and of itself. "Misrepresenting the purpose of logging into Topstep's Sites and Services" *is* "a false promise to perform at some time in the future time"—that is, to perform with a particular "purpose" (in this case, to abide by the website terms of use). In other words, Topstep is conceding that the "misrepresentation" was that OneUp would agree to the terms of use and not use the content for another purpose in violation of the terms of use. This is precisely the type of allegation that the Illinois courts have held is simply not cognizable fraud.

Moreover, the purported conduct on which Topstep relies is far from the pattern of egregious deceptions necessary to fall within the exception to the rule prohibiting claims of promissory fraud. *See Jada Toys,* 2008 WL 1722140, at *1. It is still, at best, "only one objective manifestation" of a false promise to perform future conduct—which is not enough to survive a motion to dismiss. *Id.* (granting motion to dismiss where claimant alleged "one [false] representation and a series of acts over seven years in reliance on that representation"). Furthermore, this conduct cannot be considered "egregious" because that label is reserved for

only the most outrageous and heinous behavior. *See, e.g.*, *Pulphus v. Sullivan,* No. 02 C 5794, 2003 WL 1964333, at *1-*5, *19 (N.D. Ill. April 28, 2003) (inducing elderly plaintiff to take out two mortgages to remodel her home, forging her signature on documents, and doing minimal work while pocketing $75,000 was sufficiently egregious to fall within the exception to the rule).

Nor does Topstep adequately address OneUp's argument that the SAC fails to plead fraud with sufficient particularity. Topstep responds by conclusorily proclaiming that "Topstep has plead with the sufficient particularity the who, what, when, where, and how of the alleged fraud." Topstep Br. at 12. But, as OneUp emphasized, Topstep's allegation that "OneUp knowingly made a misstatement of material fact to TST . . . on or about September 13, 2015" (SAC ¶ 98) is not plausible because Topstep has conceded (Topstep Br. at p. 8) that OneUp did not exist until 2017. And, while Topstep now argues that it is Mr. Alsabah's purported conduct back in 2015 that should bind OneUp (Topstep Br. at 12-13), it is not plausible that Mr. Alsabah was acting on behalf of OneUp years before the company existed.

Furthermore, OneUp pointed out in its brief that Topstep's SAC is also deficient because it fails to specifically identify the Topstep employee or agent it claims "did reasonably and justifiably rely on the perceived truth of OneUp's representations" (*id.* ¶ 100) and because it fails to allege facts from which it could be concluded that Topstep was harmed by OneUp's alleged copying of insubstantial snippets from its publicly available website. Topstep does not (no doubt, because it cannot) provide a response on either of these pleading deficiencies.

**V.    Conclusion**

This is Topstep's third attempt to plead facts supporting plausible claims and again it has failed. Accordingly, Topstep's Second Amended Complaint should be dismissed with prejudice.

Dated: February 13, 2018                           ONEUP TRADER, LLC

By: /s/ David J. Wolfsohn
David J. Wolfsohn (*admitted pro hac*)
djwolfsohn@duanemorris.com
Julie M. Latsko (*admitted pro hac*)
jmlatsko@duanemorris.com
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax:    (215) 979-1020

*Attorneys for Defendants OneUp Trader, LLC
and Sattam Alsabah*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of February, 2018, I caused a true and correct copy

of the foregoing document to be served via CM/ECF on the below counsel of record:

> Brian T. Noack, Esquire
> Adam Wolek, Esquire
> Brianna Marie Skelly, Esquire
> Taft Stegginius & Hollister, LLP
> 111 East Wacker Drive, Suite 2800
> Chicago, IL 60601

> /s/ Julie M. Latsko
> Julie M. Latsko