**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| TOPSTEPTRADER, LLC, | ) | |
| | ) | |
| | ) | Case Number 17-cv-4412 |
| Plaintiff, | ) | |
| | ) | Judge: Hon. Harry D. Leinenweber |
| v. | ) | |
| | ) | |
| ONEUP TRADER, LLC, and SATTAM | ) | |
| ALSABAH, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SATTAM ALSABAH'S REPLY
MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTIONS TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION AND FOR
<u>FAILURE TO STATE A CLAIM</u>**

David J. Wolfsohn (*admitted pro hac vice*)
djwolfsohn@duanemorris.com
Julie M. Latsko (*admitted pro hac vice*)
jmlatsko@duanemorris.com
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax:    (215) 979-1020

*Attorneys for Defendants OneUp Trader,
LLC and Sattam Alsabah*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

      A.      Topstep Has Failed to Meet Its Burden of Showing That the Court Has
               Specific Jurisdiction Over Mr. Alsabah..................................................................2

            1.      Topstep Has not Met Its Burden of Showing That Mr. Alsabah
                    Consented to Jurisdiction in Illinois ..........................................................2

                  a.      Topstep's 2015 Website Contained an Unenforceable
                          Browsewrap Agreement....................................................................2

                  b.      Topstep Has Conceded That There Was no Consideration
                          for Agreeing to the 2015 Terms of Use ...........................................4

             2.      Topstep's Argument That the Court Has Specific Jurisdiction Over
                      Mr. Alsabah With Respect to the Copyright Claim Is Contrary to
                      Controlling Seventh Circuit Authority.........................................................5

      B.      Topstep's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P.
               12(b)(6) ...................................................................................................8

             1.      Topstep Failed to Allege that Mr. Alsabah Copied Topstep's
                    Website, and, in any Event, the Websites Are not "Substantially
                      Similar".....................................................................................................8

                  a.      Topstep Effectively Concedes That Mr. Alsabah Copied
                          Nothing ............................................................................................8

                  b.      As a Matter of Law, the Two Websites Are not
                        Substantially Similar.......................................................................9

              2.      Topstep's Breach of Contract Claim Must Be Dismissed with
                      Prejudice Because Topstep Has Not Plausibly Alleged That Mr.
                      Alsabah Entered into a Valid, Enforceable Contract ................................12

             3.      Topstep's Fraud Claim Lacks Specific Allegations Regarding Mr.
                      Alsabah ....................................................................................................14

             4.      Topstep Has Failed to Plead Facts Supporting an Unjust
                      Enrichment Claim Against Mr. Alsabah...................................................15

III.    CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ariel Investments—MG Design Assocs., Corp. v. Costar Realty Info., Inc.*,
    224 F. Supp. 3d 621 (N.D. Ill. 2016) ................................................................. 7-8

*Ariel Investments, LLC v. Ariel Capital Advisors LLC*,
    Nos. 17-1516 & 17-2645, 2018 WL 632553 (7th Cir. Jan. 31, 2018) ............................ 1, 5-8

*Bires v. WalTom, LLC*,
    662 F. Supp. 2d 1019 (N.D. Ill. 2009) ..................................................................13

*Culver Franchising Sys., Inc. v. Steak N Shake Inc.*,
    16 C 72, 2016 WL 4158957 (N.D. Ill. Aug. 5, 2016)............................................11

*Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc.*,
    639 F. Supp. 2d 1356 (S.D. Fla. 2009) ..................................................................10

*Hobbs v. John*,
    722 F.3d 1089 (7th Cir. 2013) ...............................................................................12

*Hussein v. Coinabul, LLC*,
    14 Civ. 5735, 2014 WL 7261240 (N.D. Ill. Dec. 19, 2014) ....................................3

*IPOX Schuster, LLC v. Nikko Asset Mgt. Co.*,
    19 F. Supp. 3d 790 (N.D. Ill. 2016) ................................................................... 7-8

*J&J Sports Productions, Inc. v. Fialko*,
    No. 17 C 3275, 2018 WL 576144 (N.D. Ill. Jan. 26, 2018) (Leinenweber, J.) ........................2

*Jada Toys, Inc. v. Chicago Import, Inc.*,
    07C699, 2008 WL 1722140 (N.D. Ill. Apr. 10, 2008) ...................................... 14-15

*Joint Commn. on Accreditation of Healthcare Orgs. v. Greeley Co.*,
    14 C 10225, 2016 WL 1450051 (N.D. Ill. Apr. 13, 2016) ................................. 9-10

*Live Face on Web, LLC v. Kam Development, L.L.C.*,
    2016 WL 7374279 (N.D. Ill. Dec. 20, 2016).........................................................11

*Muhammad-Ali v. Final Call, Inc.*,
    832 F.3d 755 (7th Cir. 2016) ................................................................................10

*Peters v. West*,
    776 F. Supp. 2d 742 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) ............................10

*Salaita v. Kennedy*,
    118 F. Supp. 3d 1068 (N.D. Ill. 2015) (Leinenweber, J.).......................................10

*Specht v. Netscape Comm'n. Corp.*,
   306 F.3d 17 (2d Cir. 2002) (Sottomayor, J.)............................................................3

*Theotokatos v. Sara Lee Personal Prods.*,
   971 F. Supp. 332 (N.D. Ill. 1997) ......................................................................12

*Van Tassell v. United Mktg. Croup*,
   LLC, 795 F. Supp. 2d 770 (N.D. Ill. 2011)...........................................................3

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) .............................................................................. 1, 5-8

## Other Authorities

Rule 8 ..........................................................................................................10

Rule 9(b) ......................................................................................................14

Rule 12(b)(2).............................................................................................. 1-2, 8

Rule 12(b)(6)...........................................................................................1, 8, 11

## I.     INTRODUCTION

Topstep's only argument in favor of personal jurisdiction over Mr. Alsabah on its four claims is that he consented to a forum selection clause buried in Topstep's 2015 terms of use. But Topstep has failed to meet its burden of making out a *prima facie* case that Mr. Alsabah agreed to those terms of use. As this Court held in ruling on Topstep's motion for a TRO, "Alsabah's click . . . is important. . . . Without this click, all TopstepTrader has is a 'browsewrap' agreement." Dkt. No. 17 at 7-8. Topstep has presented no evidence (or even allegation) showing that Mr. Alsabah clicked on the hyperlink to indicate his acceptance of Topstep's terms of use its website in 2015, so all Topstep has is a browsewrap agreement. Because Topstep has not shown that Mr. Alsabah read the terms of use or that they were conspicuous, Topstep has failed to make out a *prima facie* case that Alsabah accepted the forum selection clause contained in its 2015 terms of use.

Topstep also argues that the Court has personal jurisdiction over Mr. Alsabah on the copyright claim because Mr. Alsabah, by accessing Topstep's website and filling out a form from Kuwait, was "reach[ing] into Illinois by infringing the intellectual property rights of a plaintiff 'at home' in the state . . . with knowledge that the plaintiff would be injured in Illinois.'" Topstep Br. at 6. But Topstep fails to call this Court's attention to the Seventh Circuit's recent decision in *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, Nos. 17-1516 & 17-2645, 2018 WL 632553 (7th Cir. Jan. 31, 2018), in which the court held that this sort of reasoning was "exactly the sort of allegation the Justices deemed inadequate in *Walden [v. Fiore,* 134 S. Ct. 1115 (2014)], because 'the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.'" 2018 WL 632553, at *2 (quoting *Walden*, 134 S.Ct. at 1122-23). The court noted further that the contention that "a defendant should be

subject to personal jurisdiction in any state at which it 'aimed its actions'" is "incompatible with *Walden*; it is exactly what the [reversed] court of appeals in *Walden* had held, and not a single Justice accepted the position." 2018 WL 632553 at *2.

Even if the Court denies Mr. Alsabah's Rule 12(b)(2) motion, the Court should grant his Rule 12(b)(6) motion. For the reasons set forth in OneUp's briefing on its motion to dismiss, Topstep has failed adequately to state any claims. In addition, all of the operative (but inadequate) allegations are against OneUp, not Mr. Alsabah personally. Accordingly, all of Topstep's claims against Mr. Alsabah should be dismissed.

## II.    ARGUMENT

### A.    Topstep Has Failed to Meet Its Burden of Showing That the Court Has Specific Jurisdiction Over Mr. Alsabah

#### 1.    Topstep Has not Met Its Burden of Showing That Mr. Alsabah Consented to Jurisdiction in Illinois

##### a.    Topstep's 2015 Website Contained an Unenforceable Browsewrap Agreement

Topstep argues that Mr. Alsabah consented to jurisdiction in Illinois because in 2015 he accessed Topstep's website from Kuwait and agreed to Topstep's terms of use, which contain a forum selection clause. But the only allegation in the SAC that Mr. Alsabah agreed to Topstep's terms of use is the following conclusory one: "In or about September 2015, OneUp, at least through Alsabah, accessed [Topstep's] Website and agreed to be bound by the terms and conditions of the Original [terms of use]." SAC ¶ 38. This allegation of "agreement" is based on the notion that merely by browsing on Topstep's website, Mr. Alsabah accepted terms of use that were only available by clicking on a hyperlink. As pointed out in Mr. Alsabah's opening brief, the SAC does ***not*** allege that, in 2015, Mr. Alsabah clicked on the hyperlink to Topstep's terms

of use. Alsabah Brief at p. 10. Now that Topstep has served its brief in opposition, the following

facts are undisputed:

- To access Topstep's website in 2015, one was ***not*** required to view or click acceptance of the terms of use associated with that website; the terms of use were therefore subject to a "browsewrap" rather than "clickwrap" agreement. Alsabah Brief at p. 9.
- Topstep has not alleged that Alsabah clicked acceptance of the terms of use and, despite being granted jurisdictional discovery, Topstep has come forward with no evidence that he did. Alsabah Brief at p. 10.
- Although Topstep has provided evidence that Mr. Alsabah provided Topstep with his email address and thereby created an account with Topstep in 2015, Topstep does not dispute that, in 2015, one could submit one's email address to Topstep ***without*** following the hyperlink to the terms of use or clicking acceptance. Alsabah Brief at p. 10 & Exh. D.

Because Mr. Alsabah has filed a Rule 12(b)(2) motion, Topstep bears the burden of

providing a *prima facie* case for personal jurisdiction. *J&J Sports Productions, Inc. v. Fialko*,

No. 17 C 3275, 2018 WL 576144, at *2 (N.D. Ill. Jan. 26, 2018) (Leinenweber, J.). Given the

uncontested facts noted above, Topstep has failed to establish a *prima facie* case that Mr.

Alsabah consented to personal jurisdiction in Illinois. "[F]or a browsewrap agreement to be

enforced, the user must have had actual or constructive knowledge of the website's terms of and

conditions." *Hussein v. Coinabul*, LLC, 14 Civ. 5735, 2014 WL 7261240, at *2-3 (N.D. Ill. Dec.

19, 2014). Topstep has come forward with no evidence of Mr. Alsabah's "actual knowledge" of

the terms of use. As for constructive knowledge, the terms of use were not "sufficiently

conspicuous" since they were buried behind a hyperlink that Topstep has not claimed Mr.

Alsabah clicked, followed, or read. *Van Tassell v. United Mktg. Group*, LLC, 795 F. Supp. 2d

770, 789 (N.D. Ill. 2011) (terms of use hyperlinked on website "not 'sufficiently conspicuous' to

provide adequate notice that they were part of any contract."); *see also Specht v. Netscape*

*Comm'n Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (downloading of software did not constitute

acceptance of license terms because there was no reasonably conspicuous notice of those terms

3

or unambiguous manifestation of assent) (Sottomayor, J.). Indeed, Topstep does not even bother arguing that the terms of use were "sufficiently conspicuous."

To be sure, Topstep has alleged that Mr. Alsabah created an account with it in 2015 from Kuwait. Topstep Brief at Exh. C, last page. What is conspicuously absent from Topstep's brief, however, is an affidavit or some documentary proof that, in order to create an account with Topstep in 2015, one was required to click the hyperlink to the terms and conditions. That omission speaks volumes.[1] Because the forum selection clause that Topstep argues Mr. Alsabah agreed to was buried in the terms of use, which were accessible only by clicking on a hyperlink, and because Topstep has failed to come forward with evidence that Alsabah in fact clicked on that hyperlink, Topstep has failed to make out a *prima facie* case that Alsabah consented to personal jurisdiction in Illinois.

> **b.      Topstep Has Conceded That There Was no Consideration for Agreeing to the 2015 Terms of Use**

Mr. Alsabah's opening brief pointed out that, to be enforceable, a contract must have consideration, and there was no consideration for the terms of use since all the content of Topstep's website was publicly available without any need to agree to the terms of use. Alsabah Brief at p. 8. Accordingly, even if Mr. Alsabah had agreed to the terms of use, any such agreement would be void. Topstep has no response to this argument, effectively conceding it. For this reason as well, the forum selection clause cannot be enforced against Mr. Alsabah.

---

[1] Topstep argues that the forum selection clause is enforceable because Alsabah "consented to the TOU by creating an account." Topstep Brief at p. 2.  But this is just lawyer argument. Topstep has neither alleged nor supported with an affidavit or document the proposition that one had to view the terms of use in order to create an account.

2. **Topstep's Argument That the Court Has Specific Jurisdiction Over Mr. Alsabah With Respect to the Copyright Claim Is Contrary to Controlling Seventh Circuit Authority**

Topstep admits that it lacks the facts to argue that the Court can assert general jurisdiction over Mr. Alsabah. Topstep Br. at p. 3 n.2. It apparently also concedes that the Court lacks specific jurisdiction over Mr. Alsabah with regard to the claims for breach of contract, unjust enrichment, and fraud since its brief is limited to arguing that the Court has specific jurisdiction over Mr. Alsabah with respect to *the copyright claim only*. *Id.* at pp. 4-7. But Topstep's argument regarding the copyright claim ignores controlling authority.

In *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court held that specific jurisdiction cannot be established based solely on the plaintiff's contacts with the forum. "The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.' And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." 134 S. Ct. at 1126 (citation omitted). Accordingly, the Supreme Court reversed the Court of Appeals' decision upholding specific jurisdiction because it had improperly shifted "the analytical focus from petitioner's contacts with the forum to his contacts with respondents." *Id.* at 1124. The Court held that, in deciding whether a court has specific personal jurisdiction over a defendant, emphasizing the place of the plaintiff's injury and focusing on the plaintiff's contacts with the defendant and the forum was "misplaced." *Id.* at 1125. Instead, "it is the defendants, not the plaintiff or third parties, who must create contacts with the forum State." *Id*. at 1126.

The Seventh Circuit took up this issue in January of this year in an intellectual property case. In a unanimous decision, the court of appeals rejected the notion that it is sufficient to base specific personal jurisdiction in an intellectual property case on allegations that the defendant had set out to injure the plaintiff knowing that the plaintiff was located in Illinois. *Ariel*

5

*Investments,* 2018 WL 632553, at \*2. Writing for a unanimous court, Judge Easterbrook first characterized *Walden* as holding that "a defendant's knowledge and intent concerning a resident of State A do not justify compelling that person to defend himself there." 2018 WL 632553, at \*1. The Seventh Circuit explained that the district court had based jurisdiction on the rationale that the defendant had "'deliberately set out to trade on the reputation and goodwill of an Illinois entity. As a matter of policy, the law ought not require a holder of intellectual property . . . in these circumstances to go to the home forum of one who has, in effect reached into the holder's home forum to take its property. When an out-of-state entity chooses to trade on the established name of an entity in the forum state and use that name for its own gain, it has, in the Court's view, established a relationship not just with the in-state entity, but with the forum state itself.'" *Id.* at \*1 (quoting district court opinion at 2015 U.S. Dist. LEXIS 187800 at \*9-10). The Seventh Circuit rejected this reasoning as inconsistent with *Walden*: "The district court thought that Ariel Capital had set out to injure Ariel Investments, knowing that it is located in Illinois. That's exactly the sort of allegation the Justices deemed inadequate in *Walden*, because 'the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.'" 2018 WL 632553 at \*2 (quoting *Walden*, 134 S.Ct. at 1122-23). The court noted further that the contention that "a defendant should be subject to personal jurisdiction in any state at which it 'aimed its actions'" is "incompatible with *Walden*; it is exactly what the [reversed] court of appeals in *Walden* had held, and not a single Justice accepted the position." 2018 WL 632553 at \*2.

Topstep makes the fatal error of adopting the rationale rejected in *Ariel Investments*. It argues that this Court has specific personal jurisdiction over Mr. Alsabah because he supposedly

knew that Topstep was located in Chicago, because Topstep "alleges that it felt harm in Illinois as an Illinois entity," and because "Alsabah deliberately set out to feed off of Topstep's established business reputation and unlawfully use Topstep's property." Topstep Brief at pp. 5-6. In the first place, as explained further below, the SAC does not, in fact, allege that Mr. Alsabah knew Topstep was located in Chicago, and does not allege that Mr. Alsabah copied anything from Topstep's website. But even if Topstep had made such allegations, Topstep's argument was rejected in *Ariel Investments*.

Topstep relies heavily on two cases that were overruled by *Ariel Investments—MG Design Assocs., Corp. v. Costar Realty Info., Inc*., 224 F. Supp. 3d 621, 632 (N.D. Ill. 2016) and *IPOX Schuster, LLC v. Nikko Asset Mgt. Co*., 191 F. Supp. 3d 790, 800 (N.D. Ill. 2016). Topstep argues that *MG Design* is a "closely analogous case" that holds that a defendant who "'reaches into Illinois by infringing the intellectual property rights of a plaintiff 'at home' in the state . . . with knowledge that the plaintiff would be injured in Illinois' is subject to the jurisdiction of Illinois courts." Topstep Br. at 6, *quoting MG Design*, 224 F. Supp. 3d at 633. But Topstep ignores *Ariel Investments*, even though its counsel argued the winning position in that case. As noted, *Ariel Investments* held that, in an IP case, the notion that jurisdiction in the forum state could be premised on the defendant's intent to harm what it knew was a company located in that forum was "exactly the sort of allegation the Justices deemed inadequate in *Walden*." 2018 WL 632553 at *2. And *MG Design*'s rationale was based entirely on the **district court's** decision in *Ariel Investments*—the one reversed by the Seventh Circuit. Indeed, *MG Design* quotes heavily from the same language in the district court's opinion that the Seventh Circuit expressly **rejected**: "As a matter of policy, the law ought not require a holder of intellectual property . . . to go to the home forum of one who has, in effect, reached into the holder's forum to take its property. When

7

an out of state entity chooses to trade on the [property] of an entity in the forum state . . . it has, in the Court's view established a relationship not just with the in-state entity, but with the forum state itself.'" 224 F. Supp. 3d at 632-33 (quoting *Ariel Invs.*, 2015 U.S. Dist. LEXIS 187800 at *9-10). As noted, ***this very quote*** was held "incompatible with *Walden*" by the Seventh Circuit.[2]

Accordingly, even if Topstep had alleged that Mr. Alsabah copied Topstep's website knowing that such copying would harm Topstep in Illinois, after *Walden* and *Ariel Invs.* Those allegations are insufficient. The copyright claim (and the other claims) should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**B.      Topstep's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)**

**1.      Topstep Failed to Allege that Alsabah Copied Topstep's Website, and, in any Event, the Websites Are not "Substantially Similar"**

**a.      Topstep Effectively Concedes That Mr. Alsabah Copied Nothing**

Mr. Alsabah's motion argued that a well-pled claim for copyright infringement against an individual requires factual allegations that the individual defendant "***personally participated*** in the alleged copying." Alsabah Br. at 13-14 (emphasis supplied). Topstep responds by asserting that the SAC "did plead Alsabah's involvement in the infringement scheme, including that he 'wholesale copied TST's business platform and its copyrighted website content to use on its own website.'" Topstep Brief at p. 9. Topstep then quotes from paragraph 52 of the SAC as alleging "wholesale copying of the website," but that paragraph refers to "***OneUp's*** wholesale copying of the Website," not any copying by Mr. Alsabah. Topstep's response proves Mr. Alsabah's point: the only allegations of copying are against OneUp, not Mr. Alsabah personally.[3]

---

[2] Likewise, Topstep's reliance on *IPOX Schuster*, 191 F.Supp.3d at 800 is misplaced. Topstep Brief at p. 4.  *IPOX* relies upon the same quote and reasoning from *Ariel Investments* that the Seventh Circuit rejected. 191 F.Supp.3d at 800.

[3] As noted in Mr. Alsabah's opening brief, the first un-numbered paragraph of the SAC confusingly defines "OneUp" as including Mr. Alsabah and OneUp, and OneUp's "predecessors in interest, successors, or joint ventures

**b.** **As a Matter of Law, the Two Websites Are not Substantially Similar**

Mr. Alsabah's opening brief incorporated the argument in OneUp's motion to dismiss, noting that only three sentences in the 309 pages of Topstep's website contained any word overlap, plus four short industry-standard phrases. Only one of these sentences is identical and the three sentences in question—Topstep's "trade a minimum of 15 days" versus OneUp's "trade a minimum of 10 days"; Topstep's "Trade permitted products and times" versus OneUp's "Only trade during permitted times"; and both parties' "Do not hit or exceed the Daily Loss Limit"— use a total of *seventeen words* in common. The four short industry terms—"Max Position Size," "Daily Loss Limit," "Max Drawdown," and "Profit Target" total *ten words*. That's a grand total of 27 words found in three sentences and four industry trading terms in a website of 309 pages. These sentences and industry terms are repeated four times in Topstep's website. Multiplying 27 times four yields a total of 108 allegedly infringing words. As explained in more detail in OneUp's reply brief, this compares with a total word count in Topstep's website of well over *31,000*. So even if the three sentences and four industry terms were copyrightable, that would be about one-third of one percent of the text in Topstep's website that overlaps in terms of word choice with OneUp's website (108 ÷ 31,000 = .00348).

Such a tiny smattering of overlapping verbiage does not, as a matter of law, meet the "substantial similarity" test. *Joint Commn. on Accreditation of Healthcare Orgs. v. Greeley Co.*, 14 C 10225, 2016 WL 1450051 (N.D. Ill. Apr. 13, 2016) is directly on point. In *Greeley*, the

---

thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, and those acting in privity or concert with them, or on their behalf." But the rest of the SAC ignores this definition, since it refers to Mr. Alsabah individually. Moreover, since this definition is so broad and vague, if it were to be taken literally, the SAC would not give fair notice to Mr. Alsabah of the claims against **him personally**, as opposed to the claims against the many contained in this broad definition.

plaintiff claimed that its work was substantially similar to the defendant's work because two paragraphs out of 742 pages were identical and one page contained mainly paraphrased text. 2016 WL 1450051, at *7. The court ruled on defendant's motion to dismiss that "[t]hese allegations fall well short of plausibly alleging substantial similarity" between the two works. *Id.* Such "minimal degree of duplication is not a reproduction of a substantial portion of the plaintiffs' work and the complaint, thus, fails to satisfy the plaintiffs' obligation under Rule 8 to plausibly allege infringement of their copyright in the" plaintiffs' work. *Id.*[4]

Topstep attempts to distinguish *Greeley* by arguing that it somehow did not have access to Topstep's website. Topstep Br. at 10-11. This argument makes no sense. Topstep has attached to its complaint (and to its TRO papers) the portions of OneUp's website that it argues are "substantially similar," so obviously it has had access to OneUp's website. The notion that some other material authored by OneUp might be infringing is speculative and not plausible, and certainly fails to meet the *Iqbal/Twombly* requirement of alleging *facts* supporting "substantive plausibility." *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1076 (N.D. Ill. 2015) (Leinenweber, J.) (complaint must contain enough facts to state claims plausible on their face; factual allegations must show that claim has "substantive plausibility").

Ignoring this case law, Topstep relies exclusively on cases in which it was undisputed that the defendant had copied "constituent elements of the work that are original" or in which the

---

[4] Topstep simply ignores the other cases discussed in OneUp's brief in which much larger percentages of overlap were held to be quantitatively or qualitatively insufficient as a matter of law. *See, e.g., Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc.*, 639 F. Supp. 2d 1356, 1362 (S.D. Fla. 2009) (defendant's three-page websites, even if they were similar to the plaintiff's site, were too insignificant a portion of defendant's 43-page website to be substantially similar); *Peters v. West*, 776 F. Supp. 2d 742, 751–52 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (defendant's song was not substantially similar to plaintiff's song where "[t]he only smaller fragments that are copied literally are the words 'don't kill me make me stronger,' 'wronger,' 'wait no longer,' and 'Kate Moss,' which do not have readily recognizable qualitative significance in relation to the plaintiff's work as a whole").

issue of "substantial similarity" was not raised by the defendant. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016) ("*No one disputes* that Ali proved both of these," i.e., "ownership of a valid copyright" and "copying of constituent elements of the work that are original.") (emphasis supplied); *Live Face on Web, LLC v. Kam Development, L.L.C.*, 2016 WL 7374279, at *3 (N.D. Ill. Dec. 20, 2016) (complaint alleged that the code was copied based on presence of unique identifiers; defendant argued that "access" had not been alleged).

Here, we know *from Topstep's own allegations* that only a tiny portion of the website contains any verbal overlap, in particular what is shown in Exhibits F and I. SAC ¶ 54 (referring to Exhibit F as showing "numerous graphs and tables [on OneUp's website] with either no change or *de minimis* changes as compared to TST's website"); ¶ 66 ("Website comparison showing substantially similar content [is] at Exh. I."). But the only alleged copying of Topstep's website that is evident in Exhibits F and I is the three sentences and four industry terms discussed at length above.

Topstep also argues that graphs and tables in the two works are similar, Topstep Br. at 9 but any such similarity is certainly not apparent upon visual inspection. In any event, Topstep owns no copyright in any charts or graphs in its website since the Copyright Office refused to include them in the copyright registration. *See* Topstep's June 19, 2017 and July 6, 2017 correspondence with the Copyright Office, attached hereto as Exh. A. Topstep argues that the registration somehow includes "charts and graphs," but the July 6, 2017 email exchange clearly shows that Topstep agreed to the examiner's description of new authorship as limited to "text and photographs," not the "charts and graphs." Exh. A at page 5. Accordingly, Topstep has renounced copyright in any "charts and graphs."

When a defendant files a Rule 12(b)(6) motion with respect to a copyright claim, the Court should compare the works side by side as they appear as exhibits to the complaint. *Culver Franchising Sys., Inc. v. Steak N Shake Inc.*, 16 C 72, 2016 WL 4158957, at *1, 9 (N.D. Ill. Aug. 5, 2016) (dismissing copyright claim with prejudice because "repleading would appear futile because the fatal flaw in [plaintiff's] case—that the two commercials are not substantially similar as a matter of law—cannot be cured by amendment"); *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (affirming dismissal of copyright claim where comparison of lyrics showed they were not substantially similar, notwithstanding plaintiff's characterization of defendant's song as "similar"); *Theotokatos v. Sara Lee Personal Prods.*, 971 F. Supp. 332, 340–41 (N.D. Ill. 1997) (where both works are attached to complaint, "a court may compare the works and determine as a matter of law whether they are substantially similar with respect to copyrightable material. . . . In making such a comparison the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works as contained in the pleadings."). As a matter of law, the two websites are not substantially similar.

### 2. Topstep's Breach of Contract Claim Must Be Dismissed with Prejudice Because Topstep Has Not Plausibly Alleged That Mr. Alsabah Entered into a Valid, Enforceable Contract

Mr. Alsabah's opening brief explained that Topstep had not alleged facts supporting a "substantively plausible" claim that he breached a contract, had not pled consideration, and had not pled facts showing that, even if Mr. Alsabah had agreed to the 2015 terms of use, those terms were enforceable. Alsabah Br. at p. 14. As explained above, the complaint fails to allege facts that would support a claim that Mr. Alsabah clicked on the hyperlink to the terms of use in 2015, thereby failing to allege that Mr. Alsabah in fact agreed to those terms of use. In response, Topstep refers the Court to several allegations that ***do not mention Mr. Alsabah at all***. Topstep Br. at pp. 11-12. Topstep argues that OneUp "is defined to mean OneUp and Alsabah," *id*. at p.

11 n.10, but there are numerous places in the SAC that do refer to Alsabah individually, as well as allegations such as the following in paragraph 77: "OneUp and/or individuals acting for and on OneUp's behalf…"

Nor are the terms of use enforceable, even if Topstep had properly alleged that Mr. Alsabah had agreed to them. Mr. Alsabah's brief incorporated OneUp's arguments on this subject contained in OneUp's motion to dismiss. OneUp emphasized that the terms of use constituted confidentiality agreements and restrictive covenants both lacking in consideration since the website was freely available to the public without agreeing to any terms of use. Dkt. No. 36 at 10-15. Topstep's brief fails to respond to the "confidentiality agreement" argument, which is not surprising since the website was publicly available. Indeed, one can see from Exhibit A to the SAC—the printout of Topstep's website—that one is not required to accept any terms of use to view any of the content in the website. Accordingly, any purported agreement to abide by the confidentiality terms of use would lack consideration, since the person agreeing to them would be getting nothing of value for such an onerous agreement. Because Topstep has not plausibly alleged that the confidentiality terms are supported by consideration, the terms are void as a matter of law. *See, e.g.*, *Bires v. WalTom, LLC*, 662 F. Supp. 2d 1019, 1039 (N.D. Ill. 2009).

As for the restrictive covenant terms, Topstep argues that these terms are not restrictive covenants but rather a requirement that "users [] refrain from improperly accessing and using Topstep's confidential information and proprietary data in a manner intended to harm Topstep." Topstep Br. at p. 12. But Topstep called these provisions "restrictive covenants" in its First Amended Complaint. Docket No. 24 ¶¶ 31, 32. Moreover, the terms of use define "improper" as competitive use; Topstep's terms of use *permit* the use of all information on the website ***as long as the user does not compete.*** *See, e.g.,* SAC ¶ 85 ("OneUp further breached the TOU when

13

OneUp violated the provision that expressly forbids it to 'use [TST's] Sites or Services [of TST] to gain ***competitive intelligence*** about [TST] or the Sites or Services to compete with [TST] or its affiliates.'" (emphasis supplied). The restrictive covenants are unenforceable as lacking consideration and as overly broad, since they prohibit anyone who has ever viewed the website from competing with Topstep.

### 3. Topstep's Fraud Claim Lacks Specific Allegations Regarding Mr. Alsabah

Mr. Alsabah's motion observed the SAC does not specifically allege that Mr. Alsabah made a false statement of a material fact, knowledge that the statement was false, intent that the statement induce Topstep to act, reliance by Topstep on the statement, or damages caused by the statement. Alsabah Br. at 15. Instead, all of the purported fraud allegations are against OneUp. In response, Topstep refers to paragraphs 35 to 37, which do mention Mr. Alsabah, but which do not allege that he made a fraudulent statement made with scienter, or allege reliance or damages based on that statement. Topstep Br. at 14. Topstep then refers to paragraphs 46, 47, 50, and 98 to 105, but these all refer to OneUp, not Mr. Alsabah. And even if one construes "OneUp" to refer to both OneUp and all persons acting on its behalf, plus Mr. Alsabah, then the SAC still flunks Rule 9(b) because Topstep has not specifically alleged who made the supposedly false statement and other prerequisites for asserting a proper fraud claim.

Moreover, as explained in Mr. Alsabah's and OneUp's motions and in OneUp's reply brief, Topstep's fraud claim misses the mark for the straightforward reason that the conduct alleged is not fraud as a matter of law. "[M]isrepresenting an intention to perform future conduct, even if made without a present intention to perform, does not constitute fraud" in Illinois. *Jada Toys, Inc. v. Chicago Import, Inc.*, 07C699, 2008 WL 1722140, at *1 (N.D. Ill. Apr. 10, 2008). Topstep's alleges a single false promise by OneUp—i.e., that "OneUp knowingly made a

misstatement of material fact to TST when, on or about September 13, 2015, OneUp expressed its false intention to abide by the terms of the Original and Revised TOU when OneUp accepted the terms of the Original TOU and set up a User Account on TST's Website." SAC ¶ 98. Now that OneUp has pointed out that the conduct alleged is insufficient to state a claim for fraud (OneUp Br. at 17-19), Topstep lards its brief with references to a "fraudulent scheme." Topstep Brief at p. 14. But critically and fatally, Topstep never identifies where in the SAC it is alleged that Mr. Alsabah made a misrepresentation of a material fact. The only such allegation is against OneUp, not Topstep, and the allegation against OneUp falls squarely within the Illinois rule that "a false promise to perform at some time in the future" (i.e., to abide by the terms of use) is not fraud. *See Jada Toys,* 2008 WL 1722140, at \*1.

### 4. Topstep Has Failed to Plead Facts Supporting an Unjust Enrichment Claim Against Mr. Alsabah

As with its other purported claims, Topstep fails to allege anything specific with regard to Mr. Alsabah. Topstep argues that "Alsabah unjustly benefited from his conduct and without compensating Topstep," but Topstep cites to paragraphs 92 through 96 of the SAC, which refer to OneUp, not Mr. Alsabah. Nor does Topstep ever explain how Mr. Alsabah received any benefit deserving of compensation given the uncontested fact that all of the content of Topstep's website was made available to anyone in the world with Internet access.

## III. CONCLUSION

For the foregoing reasons, the SAC should be dismissed for lack of personal jurisdiction and failure to state a claim against Mr. Alsabah. And, because this is Topstep's third attempt at a viable complaint, it clearly lacks the facts needed to establish personal jurisdiction or to state a claim against him. Accordingly, the SAC should be dismissed with prejudice.

Dated: February 20, 2018            SATTAM ALSABAH

By: /s/ Julie M. Latsko

David J. Wolfsohn (*admitted pro hac*)
djwolfsohn@duanemorris.com
Julie M. Latsko (*admitted pro hac*)
jmlatsko@duanemorris.com
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020

*Attorneys for Defendants OneUp Trader, LLC
and Sattam Alsabah*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of February. 2018, I caused a true and correct copy

of the foregoing document to be served via CM/ECF on the below counsel of record:

Brian T. Noack, Esquire
Adam Wolek, Esquire
Taft Stegginius & Hollister, LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

Sanna-Rae Taylor, Esquire
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202


/s/ Julie M. Latsko
Julie M. Latsko