IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOPSTEPTRADER, LLC,

                Plaintiff,

      v.

ONEUP TRADER, LLC and SATTAM
ALSABAH,

                Defendants.

Case No.  17 C 4412

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are OneUp Trader's Motion to Dismiss the Second Amended Complaint for failure to state a claim [ECF No. 35] and Alsabah's Motion to Dismiss for lack of personal jurisdiction and failure to state a claim [ECF No. 48].  For the reasons stated herein, both Motions to Dismiss are granted in part and denied in part.

## I.  BACKGROUND

The following facts are taken from TopstepTrader's Second Amended Complaint ("Complaint") and are presumed true for the purpose of this Motion.  *See, Munson v. Gaetz,* 673 F.3d 630, 632 (7th Cir. 2012).  TopstepTrader is an Illinois-based company that operates a website platform that trains its users to trade via simulations and then (if they are successful in training) allows them to trade in the market using TopstepTrader's

capital. (Compl. ¶¶ 9-14.)   The eventual profits made by the users are split with TopstepTrader. (*Id.*)   Saddam Alsabah ("Alsabah") is a resident of Kuwait who signed up for an account with TopstepTrader in the fall of 2015 with the alleged purpose of copying its intellectual property and business model and creating his own copycat business using the copied material. (*Id.* ¶¶ 3, 35-51.)   Alsabah created Defendant OneUp Trader ("OneUp") as the copycat business. (*Id.*)   TopstepTrader alleges that by copying its materials, Alsabah and OneUp breached its Terms of Use ("Terms") and infringed its copyrighted material. The Complaint brings four counts against Defendants: copyright infringement (Count I), breach of contract (Count II), unjust enrichment (Count III), and fraud (Count IV).   Both Defendants move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim and Alsabah individually moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

## II.  **ANALYSIS**

### A.  **Alsabah's 12(B)(2) Motion to Dismiss**

#### 1.  *Personal Jurisdiction*

##### a.  *12(b)(2) Standard*

A motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant.   A complaint

need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003) (citations and quotations omitted). Where personal jurisdiction is decided on the papers as opposed to after an evidentiary hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). Although the Court must accept the plaintiff's uncontroverted allegations as true, if "the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must [then] go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research,* 338 F.3d at 783. All disputes concerning relevant facts are resolved in the plaintiff's favor. *Id.* at 782-83.

TopstepTrader asserts personal jurisdiction under two independent theories: first, that Alsabah consented to jurisdiction by agreeing to the Terms, which contained a forum selection clause, and second, that Alsabah's minimum contacts with Illinois are sufficient for personal jurisdiction. We address each contention in that order.

### b. Forum Selection Clause

A valid forum selection clause is sufficient to establish personal jurisdiction. *See, TruServ Corp. v. Flegles, Inc.,* 419 F.3d 584, 589 (7th Cir. 2005). Alsabah argues that TopstepTrader's Terms (and the forum selection clause within them) are unenforceable because the agreement lacks consideration. This argument is meritless. The consideration exchanged was access to the website. *See, LKQ Corp. v. Thrasher,* 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) ("Under the traditional rule, consideration is relatively easy to show. As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of the consideration.") Alsabah rebuts by pointing out that the website was publicly available via YouTube, but the import of this is an enigma. A YouTube video does not allow a user to actually *use* the website, nor does it include the website's full content. (Compl. ¶ 19.) TopstepTrader gave Alsabah the ability to use TopstepTrader's website and access its full content, which is sufficient for consideration. *Id.; see, Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 766 (7th Cir. 2010) (quoting *Mid-Town Petroleum, Inc. v. Gowen,* 611 N.E.2d 1221, 1227 (Ill. App. Ct. 1993)) ("A peppercorn can be

considered sufficient consideration to support a contract in a court of law.") (*as amended* (Dec. 16, 2010)).

Alsabah's next argument carries more weight. He contends that he never accepted the Terms by creating an account because: (1) he never agreed to a clickwrap agreement, and (2) under a browsewrap agreement, he lacked notice of the Terms. TopstepTrader attempts to evade this argument by merely concluding that "Alsabah accepted the Terms and its forum selection clause when he created an account on TopstepTrader's website. In doing so, he consented to this Court's jurisdiction over him." (Mem. in Opp'n to Alsabah's Mot. to Dismiss at 2, Dkt. 72.) This argument does not address Alsabah's argument that he never agreed to the Terms in the first instance. The only case TopstepTrader cites involving a website agreement is *Productive People, LLC v. Ives Design,* No. CV 09 1080, 2009 WL 1749751, at *1 (D. Ariz. June 18, 2009), but in that case, it was undisputed that defendants agreed to plaintiff's terms of service agreement. That is not the case here. Thus, the Court must determine whether Alsabah agreed to the Terms when he created an account on TopstepTrader's website.

Although contracts formed by creating an account on a website are a "newer form[] of contracting," the same common law contract principles apply:

> In Illinois, as in many states, the law governing the formation of contracts on the Internet is still in the early stages of development. But there is no reason to think that Illinois's general contract principles do not apply. Formation of a contract requires mutual assent in virtually all jurisdictions; Illinois courts use an objective approach to that question.

*Sgouros v. TransUnion Corp.,* 817 F.3d 1029, 1034 (7th Cir. 2016); *see also, Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 403 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."). In translating the principles of contract formation to the internet, the relevant inquiry is (1) "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement," and (2) "whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *Sgouros,* 817 F.3d at 1034. Such an inquiry is "fact-intensive." *Id.*

Given the fact-intensive inquiry, the exact wording and layout of the TopstepTrader website in the fall of 2015 is relevant here. In September 2015, Alsabah was presented with a webpage that stated "Join Now for Free." (*See,* Ex. D to Mem. in Supp. of TRO, Dkt. 8-5; Testimony of Rudman at TRO Hearing (July 13, 2018) Dkt. 18 at 73:14-24, 80:21-81:7, 90:23-91:18.) The webpage had boxes to fill in personal information. *Id.*

Right below this form for personal information was a fairly large button with large, white print labeled "Sign Up." *Id.* The phrase "I agree to the terms and conditions" appeared directly under the "Sign Up" button in small print. *Id.* This phrase was hyperlinked, meaning that clicking on the phrase produced a copy of the Terms. *Id.* An image of the layout is replicated below, *id.*:



The parties dispute whether the alleged contract before the court is a "clickwrap" or "browsewrap" agreement. A "clickwrap" agreement is formed when website users click a button or check a box that explicitly affirms that the user has accepted the terms after having the opportunity to view or scroll through the terms posted on the website and this type of agreement is generally enforced. *Sgouros v. TransUnion Corp.,* No. 14 C 1850, 2015 WL

507584, at *4 (N.D. Ill. Feb. 5, 2015), *aff'd,* 817 F.3d 1029 (7th Cir. 2016) (citing *Nguyen v. Barnes & Noble,* 763 F.3d 1171, 1175-76 (9th Cir. 2014)); *see also, Van Tassell v. United Mktg. Grp., LLC,* 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (courts "regularly uphold" clickwrap agreements when structured properly). A "browsewrap" agreement, on the other hand, is an agreement where users are bound to the website's terms by merely navigating or using the website; the user is not required to sign an electronic document or explicitly click an "accept" or "I agree" button. *Sgouros,* 2015 WL 507584, at *6 (citations and quotations omitted). "Courts enforce browsewrap agreements only when there is actual or constructive knowledge of terms." *Id.* Of course, human ingenuity and the constant development of technology means that not all interfaces fit neatly into one of these two categories. *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 75-76 (2d Cir. 2017).

Such is the case here. The type of agreement that Alsabah encountered in September 2015 appears to fall in-between these two forms—a middle ground that has been termed a "hybrid" or a "sign-in-wrap." *Id.; Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 235-36 (2d Cir. 2016). "Sign-in-wrap" agreements never have the user take an affirmative action to explicitly agree to the terms of the site, but it does require some form of affirmative action

by requiring the user to sign up for an account. Usually during the sign up process, the webpage states something to the effect of: "By signing up for an account with [website provider], you are accepting the [website]'s terms of service." While a hyperlink to the Terms is provided, the user is not required to scroll through the terms, read the terms, or otherwise explicitly indicate that he agrees to those terms before pressing the "Sign Up" button. In this scenario, the user "agrees" to the terms by signing up or creating an account. *Selden v. Airbnb, Inc.,* No. 16 CV 933, 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016), *appeal dismissed,* 681 F. App'x 1 (D.C. Cir. 2017), *cert. denied,* 138 S.Ct. 222 (2017).

TopstepTrader's website presented a sign-up agreement to Alsabah. The agreement required less than a clickwrap agreement: Alsabah did not click an "I Agree" box after scrolling through the Terms, nor did he check a box indicating that he agreed to or even read the Terms. But TopstepTrader's website required more than a browsewrap agreement: Alsabah affirmatively signed up for an account to access the website and a link to the Terms appeared immediately below the "Sign up" button with the phrase "I agree to the terms and conditions." Thus, it did not allow him to passively browse through the website as with a browsewrap agreement.

Sign-in-wraps are regularly upheld where a hyperlink to the terms and conditions appears next to the only button that will allow the user to continue use of the website." *Berkson v. Gogo LLC,* 97 F. Supp. 3d 359, 401 (E.D.N.Y. 2015). Courts applying Illinois law have upheld sign-in-wrap agreements, although they have not always characterized them as such. *See, Forby v. One Techs., LP,* No. 15 CV 0757, 2016 U.S. Dist. LEXIS 46141, at *2 (S.D. Ill. Apr. 5, 2016) (enforcing terms where the user clicked the "Continue" button and the terms were hyperlinked right above the button); *Hubbert v. Dell Corp.,* 835 N.E.2d 113, 121-22 (Ill. App. Ct. 2005) (enforcing terms that were linked to all five pages of the online checkout process).

However, there is a notable (and dispositive) distinction in these cases. The websites in these cases explicitly tell the user that by choosing to sign up for the service—or by choosing to click the operative button—the user *is agreeing* to the hyperlinked terms. *See, Forby,* 2016 U.S. Dist. LEXIS 46141, at *2 (noting that directly above the large "Continue" button was the following statement with a hyperlink to the terms: "By clicking on the 'Continue' button below, you agree to the Offer Details, to the Terms and Conditions . . ."); *Hubbert,* 835 N.E.2d at 121-22 (noting that defendant's web pages conspicuously stated: "All sales are subject to Dell's Term[s]

and Conditions of Sale."). Here, TopstepTrader's website gave the user no explicit warning that by clicking the "Sign Up" button, the user agreed to the Terms.

The Seventh Circuit has warned district courts not to "presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.) Indeed, a person using the Internet may not realize that she is agreeing to a contract at all, whereas a reasonable person signing a physical contract will rarely be unaware of that fact." *Sgouros,* 817 F.3d at 1034-35. In *Sgouros,* the Seventh Circuit held that a website contract was unenforceable where: (1) the website contained no clear statement that the user's purchase was subject to any terms and conditions of sale, (2) a scroll box that contained the visible words "Service Agreement" said nothing about what the agreement regulated, (3) the hyperlinked version of the Service Agreement was not clearly labeled, and, most importantly, (4) the text immediately before the "authorization" button did not refer to accepting the terms and conditions, but rather referred to authorizing the sharing of personal information. *Id.* at 1035.

Similarly, in *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 236–37 (2d Cir. 2016), the Second Circuit held a similar internet-based agreement unenforceable, noting that:

> unlike typical "clickwrap" agreements, clicking "Place your order" does not specifically manifest assent to the additional terms, for the purchaser is not specifically asked whether she agrees . . . Nothing about the "Place your order" button alone suggests that additional terms apply, and the presentation of terms is not directly adjacent to the "Place your order" button so as to indicate that a user should construe clicking as acceptance.

*Id.* In the same fashion, this Court recently held website terms unenforceable where the plaintiff clicked a "Submit" button, but the terms were located at the bottom of the webpage in fine print and nothing alerted users that further terms appeared below. *Sullivan v. All Web Leads, Inc.,* No. 17 C 1307, 2017 WL 2378079, at *8 (N.D. Ill. June 1, 2017). The Court found it was a reasonable assumption that the "click" authorized exactly what it seemed to—only the giving and using of personal information to get an insurance quote and not also consent to other terms. *Id.; see also, Barrera v. Guaranteed Rate, Inc.,* No. 17 CV 5668, 2017 WL 4837597, at *3 (N.D. Ill. Oct. 23, 2017) (noting the placement of terms and the tiny font made it unlikely that plaintiff was aware what he was agreeing to when he clicked the "Quote" button).

This case is more like *Sgouros, Nicosia* and *Sullivan* than *Hubert* and *Forby*. *See, Sgouros,* 817 F.3d at 1034-35; *Nicosia,* 834 F.3d at 236-37; *Sullivan,* 2017 WL 2378079, at *8. Alsabah does not deny that he clicked the "Sign Up" button next to the hyperlinked Terms, because, without doing so, he would have been unable to proceed with the activation process and would never have received access to TopstepTrader's website (furthermore, facts are construed in favor of TopstepTrader at this stage). But, unlike *Hubert* and *Forby,* nowhere does the website tell a user that clicking the "Sign Up" button indicates acceptance of the hyperlinked Terms. *See, Forby,* 2016 U.S. Dist. LEXIS 46141, at *2; *Hubbert,* 835 N.E.2d at 121-22. "[A] consumer's clicking on a . . . button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the . . . button would signify assent to those terms." *Specht v. Netscape Communications Corp.,* 306 F.3d 17, 29-30 (2d Cir. 2002) (emphasis added). Here, the meaning of clicking the "Sign Up" button is unclear. Just as in *Nicosia,* nothing about word "Sign Up" indicates that the user is agreeing to additional Terms. True, this is a closer question than in *Nicosia,* because the presentation of the (albeit small) hyperlinked Terms directly under the "Sign Up" button may indicate to a reasonable user that clicking "Sign Up" is also an

acceptance of those Terms. Yet "even close proximity of the hyperlink [of terms] to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *See, Nguyen,* 763 F.3d at 1179. TopstepTrader fails to show "more" here. Thus, as in *Sullivan,* the "Sign Up" button signaled that the user wanted to sign up for an account; it did not signal acceptance to additional Terms. Though this case presents a closer question than *Sgouros, Nicosia,* or *Sullivan* discussed above, the principles from those cases counsel against finding the Terms enforceable. And if the Terms are not enforceable, neither is the forum selection clause they contain.

Accordingly, the Court finds that personal jurisdiction over Alsabah cannot be based on the forum selection clause. However, even if Alsabah has not explicitly consented to this jurisdiction, he may still be subject to this jurisdiction based on his contacts.

### c. *Minimum Contacts*

Illinois "permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the United States." *be2 LLC v. Ivanov,* 642 F.3d 555, 558 (7th Cir. 2011); 735 ILCS 5/2-209. To the extent the federal constitutional and Illinois statutory inquiries diverge, "the Illinois constitutional standard is likely more restrictive

than its federal counterpart," but both essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable, and thus a single inquiry suffices. *KM Enters, Inc. v. Global Traffic Techs., Inc.,* 725 F.3d 718, 732 (7th Cir. 2013). The Court, therefore, asks one constitutional question: does Alsabah have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice[?]" *Daimler AG v. Bauman,* 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 923 (2011)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1984). There are two forms of personal jurisdiction: general and specific. Here, the Court need only address specific jurisdiction. (*See,* Pl.'s Mem. in Opp'n at 3 n.2 (noting that plaintiff does not assert general personal jurisdiction).)

To find specific jurisdiction, (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the

exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *See, Felland v. Clifton,* 682 F.3d 665, 674 (7th Cir. 2012) (citations omitted).

Physical contact with the forum state is not required for personal jurisdiction. "If, for example, a commercial defendant's efforts are directed toward a particular jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of crucial importance." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 781 (7th Cir. 2003) (citing *Calder v. Jones,* 465 U.S. 783, 788-89 (1984)).

Alsabah argues that OneUp's conduct cannot be attributed to him to establish personal jurisdiction. Alsabah then goes on to discuss the ins and outs of Delaware's law on the corporate form. Yet there is no need here to pierce the corporate veil. The Complaint alleges that Alsabah individually took multiple actions that establish personal jurisdiction. (*See, infra,* Discussion II.B.2.)

TopstepTrader alleges that Alsabah sought out TopstepTrader's website and services and used his access to copy its intellectual property. TopstepTrader also alleges that it is located in Illinois and submits evidence that multiple communications with Alsabah made TopstepTrader's home state clear, thus allowing the reasonable inference that Alsabah knew

TopstepTrader's location. Specifically, TopstepTrader alleges that "Defendant Alsabah intended to and did create a competing entity to [TopstepTrader] by masquerading as a potential trader purportedly interested in becoming a subscribing [TopstepTrader] Website user. All along his purpose was to gather protected and proprietary information . . ." (Compl. ¶ 35.) Further, "Alsabah individually . . . implanted [himself] into [TopstepTrader]'s training program to gather business intelligence to study [TopstepTrader]'s business platform and intellectual property, and then . . . [made] wholesale copies [of] [TopstepTrader]'s business platform and its copyrighted website content to use on [his] own website." (Compl. ¶¶ 1, 49.)

TopstepTrader relies heavily on *MG Design Assocs., Corp. v. Costar Realty Info., Inc.,* 224 F. Supp. 3d 621, 632 (N.D. Ill. 2016), *aff'd in part on reconsideration,* 267 F. Supp. 3d 1000 (N.D. Ill. 2017), for the proposition that personal jurisdiction is proper where "the defendant reaches into Illinois by infringing the intellectual property rights of a plaintiff 'at home' in the state." *Id.* (citing *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.,* 191 F. Supp. 3d 790, 800-01 (N.D. Ill. 2016). However, as Alsabah points out, *MG Design*'s reasoning has been undermined by the Seventh Circuit's decision in *Ariel Investments, LLC v. Ariel Capital Advisors LLC,* 881 F.3d 520,

- 17 -

522 (7th Cir. 2018). *MG Design* quotes and extensively relies on the reasoning of the district court that was reversed in *Ariel*. Yet *Ariel*'s holding that infringement of intellectual property is enough for personal jurisdiction is supported by specific facts that are not true for the case at bar: the defendant in *Ariel* was completely unaware of the plaintiff company's existence before getting a cease-and-desist letter and at no point "directed" his activities (or harm) to Illinois. In *Ariel,* the defendant named his company after his daughter with no knowledge that the name arguably infringed the trademark of the plaintiff's Illinois-based company. Thus, the only hook for personal jurisdiction was where the harm was felt, which *Walden* expressly held was insufficient for personal jurisdiction. *See, Walden v. Fiore,* 134 S.Ct. 1115, 1122 (2014).

That said, although *Ariel Investments* casts a considerable pallor over TopstepTrader's authority, it does not get Alsabah over the finish line. Certainly, just the fact that TopstepTrader is an Illinois corporation and the harm was felt in Illinois is insufficient to establish personal jurisdiction. *See, Ariel Investments, LLC v. Ariel Capital Advisors LLC,* 881 F.3d 520, 522 (7th Cir. 2018) (citation omitted) ("The connection must be of the defendant's creation, not of the plaintiff's."). Yet in sharp contrast to *Ariel,* the location of

the harm is not the only hook for personal jurisdiction over
Alsabah. As alleged by Plaintiff, Alsabah sought out
TopstepTrader's website, intentionally created an account on
TopstepTrader's website, and then used his access to copy
intellectual property and proprietary information. (Compl.
¶¶ 35-45.) Importantly, Alsabah knew where TopstepTrader was
located: Alsabah received numerous emails from TopstepTrader
after setting up his account, all of which identified
TopstepTrader as a Chicago-based company (*see,* Ex. B to Pl.'s
Mem. in Opp'n, Dkt. 72-2.) and TopstepTrader's website, which
Alsabah visited repeatedly, does the same (*see,* Ex. A to Compl.,
Dkt. 33-1). *Cf. Felland v. Clifton,* 682 F.3d 665, 676 n.3 (7th
Cir. 2012) (noting that email communication is relevant to a
modern personal jurisdiction analysis). Additionally, although
TopstepTrader did not argue as much, Alsabah paid a monthly
subscription fee to TopstepTrader in Illinois to use its
services from the fall of 2015 through the Spring of 2017.
(Compl. ¶ 45.)

Comparing *Ariel* with the case at bar, if the Florida-based
defendant in *Ariel* had created an account with the Illinois-
based plaintiff, the personal jurisdiction analysis would have
been different. Here, Alsabah did just that. How that account
was created—whether by walking into a brick-and-mortar store,

making a call to the business, or via their website—is not outcome determinative. While certainly walking into a brick-and-mortar store in Illinois would be stronger evidence of personal jurisdiction, creating an account by calling or via a website is also evidence of directing activities to the forum state as long as there are sufficient indicators that defendant knew the account he was affirmatively creating was with an Illinois-based company and that all activities related to that account would likely occur in Illinois. *See, Bell v. Brownie,* No. 3:15 CV 70, 2016 U.S. Dist. LEXIS 13622, at *11 (W.D.N.C. Feb. 4, 2016) (denying motion to dismiss based on personal jurisdiction where: (1) defendant created an account with ZeekRewards.com; (2) the top of the ZeekRewards homepage through which defendant logged in had a conspicuous "About Us" link, which disclosed that that the company was headquartered in Lexington, North Carolina; and (3) from the day he signed up, defendant "actively directed efforts" to the ZeekRewards program online). Given Alsabah's contacts with Illinois establish he could anticipate being haled into court here, the Court denies Alsabah's Motion to Dismiss under Rule 12(b)(2). *See, Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985).

## B. Defendants' 12(b)(6) Motions to Dismiss

At the dismissal stage, the Court accepts all well-pleaded facts as true but not legal conclusions. *Munson v. Gaetz,* 673 F.3d 630, 632 (7th Cir. 2012). The parties both cite to Illinois law regarding the state law claims in this diversity suit and, there being no apparent dispute, the Court will accordingly apply Illinois law to the state claims. *See, Speakers of Sport, Inc. v. ProServ, Inc.,* 178 F.3d 862, 864 (7th Cir. 1999).

### 1. OneUp Trader's Motion to Dismiss

#### a. Copyright Infringement (Count I)

To state a claim for copyright infringement, a plaintiff must "plausibly allege that (1) the plaintiff owns a valid copyright; and (2) the defendant copied constituent elements of the work that are original." *Joint Commn. on Accreditation of Healthcare Orgs. v. Greeley Co.,* 14 CV 10225, 2016 WL 1450051, at *3 (N.D. Ill. Apr. 13, 2016). The second element—that the defendant copied the plaintiff's work—can be shown by direct evidence, such as an admission of copying, or may be inferred "by showing that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters v. West,* 692

F.3d 629, 633 (7th Cir. 2012). OneUp does not challenge that TopstepTrader owns a valid copyright. Rather, OneUp complains TopstepTrader cannot meet the second element because TopstepTrader fails to allege plausibly substantial similarity between the websites.

When determining substantial similarity, the key question is whether "the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters,* 692 F.3d at 633-34. The test for substantial similarity is an objective one based on what an ordinary reasonable person would conclude. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 916 (7th Cir. 2007). "In assessing whether two works are substantially similar, the court 'must first identify which aspects of the plaintiff's work, if any, are protectable by copyright.' The court then analyzes 'whether the allegedly infringing work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the protectable elements of the work.'" *Culver Franchising Sys., Inc. v. Steak N Shake Inc.,* No. 16 CV 72, 2016 WL 4158957, at *4 (N.D. Ill. Aug. 5, 2016) (quoting *Nova Design Build, Inc. v. Grace Hotels LLC,* 652 F.3d 814, 817 (7th Cir. 2011)) (alteration marks omitted).

The Complaint alleges that "OneUp wrongfully copied TopstepTrader's copyrighted content," "website material and other proprietary information" to set up a "copycat platform" and "service." (Compl. ¶¶ 46-47, 49.) TopstepTrader further alleges that "OneUp copied [TopstepTrader]'s content wholesale, and then tried to hide its direct copying by modifying its content once it was uncovered. . . . Indeed, OneUp even copied many portions of [TopstepTrader]'s website verbatim, and only changed some of the content after the copying was discovered by [TopstepTrader]." (Compl. ¶ 50.) The Complaint gives several examples, including the "exact copying and use of TST's FUNDED ACCOUNTTM trademark," copies of "numerous graphs and tables with either no change or de minimus changes," and "verbatim" copying from TopstepTrader's "help section." (Id. ¶¶ 52, 54.) Furthermore, TopstepTrader provides exhibits showing what it contends are representative samples of copying from its website. (*See,* Compl. ¶ 52, 54; Exs. E, F, I to Compl.)

OneUp argues that some of TopstepTrader's short, common phrases that appear on both sites are not protectable because they are not protectable. Although OneUp is right as a general matter, OneUp fails to address TopstepTrader's point that it is the collective expression of text, graphic size, text box size, screen layout, colors, charts, tables, unique phrases and terms

that creates the overall look and feel that TopstepTrader seeks to protect. Here, the allegations and exhibits are sufficient to make the Plaintiff's claim of substantial similarity plausible. *See, Live Face on Web, LLC v. Kam Dev., L.L.C.,* No. 16 C 8604, 2016 WL 7374279, at *3 (N.D. Ill. Dec. 20, 2016) (denying motion to dismiss and finding sufficient allegations of substantial similarity); *QSRSoft, Inc. v. Rest. Tech.*, Inc., No. 06 C 2734, 2006 WL 2990432, at *5 (N.D. Ill. Oct. 19, 2006) (citation omitted) (holding that the plaintiff showed a strong likelihood that defendant copied the original elements of the copyrighted website based on the "ordinary observer test"). "At this stage of the litigation, [the plaintiff] is not required to prove copying; rather, the Complaint need only contain sufficient allegations of copying." *Live Face on Web,* 2016 WL 7374279, at *3. Based on this Court's review of TopstepTrader's website (Ex. A to Compl.), the selected portions of OneUp's website (Ex. F to Compl.), and the comparisons provided (Ex. I to Compl.), the Complaint's allegations and exhibits indicate plausible substantial similarity.

But OneUp contends that even if the examples demonstrate plausible substantial similarity, the specific examples provided by TopstepTrader only constitute a small portion of the website and therefore fail to establish *substantial* similarity.

However, "[t]he plaintiffs need not, in their complaint, catalog every instance of duplication between the defendants' work and [plaintiff's work]; rather, they must plead facts sufficient to make their claim of substantial similarity plausible. Sampling may permit such an inference, if the methodology supports an inference that the sample results are representative of the correlation between the works as a whole." *Greeley,* 2016 WL 1450051, at *8.

OneUp relies on *Greeley,* arguing that it is analogous to the case at bar. Yet *Greeley*'s facts were much stronger for the defendant. There, the Court concluded that "one page out of 742 pages that contains two paragraphs of identical text and one page that contains mainly paraphrased text" was insufficient to allege plausibly substantial similarity. *Greeley,* 2016 WL 1450051, at *7. Here, a review of the exhibits and allegations plausibly shows substantially more copying than the small portion in *Greeley*. OneUp's other case law is similarly distinguishable based on either the facts or the later stage of litigation. *See, e.g., Culver Franchising,* 2016 WL 4158957, at *6 (holding that the commercials were not substantially similar as a matter of law because the common elements were not protected expression and lacked the modicum of creativity); *Francescatti v. Germanotta,* No. 11 CV 5270, 2014 WL 2767231, at

*20 (N.D. Ill. June 17, 2014) (finding no substantial similarity on summary judgment). Thus, the evidence presented and the fact-intensive nature of the inquiry bars this Court from finding, as a matter of law, that substantial similarity does not, and could not, exist. TopstepTrader may proceed on its copyright claim.

### b. Breach of Contract (Count II)

Based on the discussion above, Alsabah's initial account creation was insufficient to create an enforceable contract. (*See, supra,* Part II.A.1.b (finding the Terms unenforceable).) However, even though the initial sign up process did not create an enforceable contract, Alsabah's subsequent interactions with TopstepTrader's website might. The Complaint alleges that "TST's Website's users agree to be bound by the terms and conditions contained in the current version of TST's TOU each time they access and use the TST Website." (Compl. ¶ 23.) Furthermore, by 2016, TopstepTrader altered its registration page to require a user to check a box stating, "Please accept Terms of Use." Right under the box was a large button labeled "Join TopstepTrader." (Ex. D to 2d Am. Compl.) This revised user interface falls neatly into the clickwrap agreements regularly enforced by the courts because it provides clear notice of terms and requires an objective manifestation of

consent to those terms—aka clicking the box. *See, Treiber &*
*Straub, Inc. v. U.P.S., Inc.,* 474 F.3d 379, 382 (7th Cir. 2007)
("As is common in Internet commerce, one signifies agreement by
clicking on a box on the screen."); *F.T.C. v. Cleverlink Trading*
*Ltd.,* No. 05 C 2889, 2006 WL 3106448, at *6 (N.D. Ill. Oct. 26,
2006) ("The click-the-box method of acceptance in internet
transactions is ubiquitous. It exists in connection with
software licenses and every imaginable form of online commercial
transaction.") The Complaint alleges that OneUp accessed
TopstepTrader's website after the new sign-in procedures
described above were in effect. (Compl. ¶ 39.) However, by 2016
Alsabah had already created an account and therefore would
presumably have clicked the phrase, "Already have an account?
Login!" This may have (or may not have) bypassed
TopstepTrader's new and improved clickwrap agreement. Neither
party has explained whether a user logging into the revised
webpage with an already-existing account would have to reaffirm
the Terms or would be given clear notice that use of the website
was subject to Terms. Although the burden lies on the non-
movant, the plaintiff must plausibly plead the existence of an
enforceable contract for a breach of contract claim. Thus, the
Court grants OneUp's Motion to Dismiss the breach of contract
claim without prejudice. TopstepTrader is given leave to amend

its Complaint to plead facts, if they exist, that support the formation of a contract between the parties based on Defendants' subsequent actions and sign-ins on TopstepTrader's website and the notice the site provides to its users in regards to the Terms.

### c. Unjust Enrichment (Count III)

OneUp argues that TopstepTrader fails to allege that it received any benefit. "To state an unjust enrichment claim under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Song v. PIL, L.L.C.,* 640 F. Supp. 2d 1011, 1015-16 (N.D. Ill. 2009) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989)). TopstepTrader alleges: "OneUp has benefitted from [TopstepTrader] by accessing and using [TopstepTrader]'s Website content, software, services, business and proprietary information without paying for the same." (Compl. ¶ 94.) Further, TopstepTrader alleges that by copying its website, OneUp was able "to short-cut product development" and avoid "invest[ing] its own time and resources into developing [the product]," thereby allowing it to "undercut [TopstepTrader]'s

subscription prices and profit splits" and "to directly compete with [TopstepTrader]" much more quickly. (Compl. ¶¶ 46-47, 51.) Basically, the price to license TopstepTrader's technology and use it in the manner OneUp did would have been much higher than the monthly subscription fee it actually paid. Whether these allegations are true or not remains for another stage. For now, they suffice.

### d. Fraud (Count IV)

OneUp moves to dismiss the fraud claim on the basis that the only misrepresentation at issue was a promise to perform in the future (*i.e.,* to use TopstepTrader's website in accordance with its Terms). Misrepresenting an intention to perform future conduct does not constitute fraud under Illinois law. *Haught v. Motorola Mobility, Inc.,* No. 12 CV 2515, 2012 WL 3643831, at *7 (N.D. Ill. Aug. 23, 2012) (citations omitted). The Complaint alleges OneUp misrepresented its intent in using the website: "OneUp expressed its false intention to abide by the [Terms] when OneUp accepted [them] and set up a User Account on [TopstepTrader]'s Website." (Compl. ¶ 98.) "While it is true that misrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud, [the Illinois Supreme Court] has recognized an exception to this rule. Under this exception,

such promises are actionable if the false promise or
representation of future conduct is alleged to be the scheme
employed to accomplish the fraud." *HPI Health Care Servs., Inc.
v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 682 (Ill. 1989)
(citations and quotations omitted). "In order to survive the
pleading stage, a claimant must be able to point to specific,
objective manifestations of fraudulent intent—a scheme or
device." *Bower v. Jones,* 978 F.2d 1004, 1012 (7th Cir. 1992)
(quotation omitted). The distinction between a scheme to
defraud and a single fraudulent promise is "elusive" and has
caused "considerable uncertainty." *Desnick v. Am. Broad. Cos.,
Inc.,* 44 F.3d 1345, 1354 (7th Cir. 1995) (collecting cases).
The animating force behind the distinction is the risk that it
is all too easy to "turn[] every breach of contract suit into a
fraud suit." *Id.* at 1354. In order to state claim, the
defendant's actions must be "particularly egregious," *see, e.g.,
Pulphus v. Sullivan,* No. 02 C 5794, 2003 WL 1964333, at *19
(N.D. Ill. Apr. 28, 2003) (finding allegations sufficiently
egregious where defendant induced elderly woman to take out two
mortgages to remodel her home and did minimal work but pocketed
$75,000), or "embedded in a larger pattern of deceptions."

OneUp contends that TopstepTrader falls short of this mark.
The Complaint alleges that OneUp's agreement to the Terms was

part of a scheme to defraud: OneUp promised to use TopstepTrader's website in accordance with its Terms knowing all the while that its intention was to "masquerade[] as a potential trader," "learn[] the methodologies of [TopstepTrader]'s business, collect[] business intelligence about [TopstepTrader]'s proprietary business structure and methods, and copy[] [TopstepTrader]'s Website content and copyrighted materials" to create a copycat service. (Compl. ¶¶ 35, 48.) But at core, these allegations amount to a breach of the Terms. The harm in this case does not come from the alleged misrepresentation, but the actual breach. And, in fact, TopstepTrader points to no other misrepresentation than the breach of its Terms. Thus, this case is not "particularly egregious" and does not involve a future misrepresentation "embedded in a larger pattern of deceptions." *See, Jada Toys, Inc. v. Chicago Imp., Inc.,* No. 07C699, 2008 WL 1722140, at *3 (N.D. Ill. Apr. 10, 2008) (granting motion to dismiss where plaintiff failed to plead a scheme to defraud); *Huthwaite, Inc. v. Randstad Gen. Partner (US),* No. 06 C 1548, 2006 WL 3065470, at *4 (N.D. Ill. Oct. 24, 2006) (same).

Accordingly, OneUp's Motion to Dismiss the fraud claim is granted with prejudice. The Court need not address OneUp's other arguments for dismissing the fraud claim.

## 2. Alsabah's 12(b)(6) Motion to Dismiss

Alsabah repeats the same arguments made by OneUp in its 12(b)(6) Motion. The Court discussed these arguments above and will not repeat them here. However, the Court must address one argument that is distinct to Alsabah.

Alsabah argues that the Complaint fails to state a claim against him because it mentions him by name only "a handful of times" and thus fails to allege Alsabah's participation in the allegedly wrongful conduct. Yet the Complaint defines "OneUp" as "Defendants Sattam Alsabah, individually, and on behalf of, OneUp Trader . . ." (Compl. at 1.) Although this definition may be unartful, this Court will not grant a motion to dismiss on this basis. Read in full, the Complaint pleads that both Alsabah and OneUp committed the wrongful actions alleged. Further, the Complaint alleges that it was Alsabah who originally signed up for an account and thus got access to TopstepTrader's services for an improper purpose. The other deficiencies Alsabah points to are reiterations of the same arguments that OneUp raised and which were rejected above.

For the same reasons described above, the Court denies Alsabah's Motion to Dismiss the copyright and unjust enrichment claims, but grants his Motion to Dismiss the breach of contract and fraud claims.

## III.  CONCLUSION

From Plaintiff's perspective, the Defendants have engaged in unlawful competition by breaching agreed-upon terms and copying intellectual property.  From Defendants' perspective, they merely engaged in competition.  Based on the Second Amended Complaint, the Plaintiff has sufficiently alleged several claims.  Whether the Plaintiff can prove those claims we leave for a later stage informed by discovery.

Accordingly, for the reasons stated herein, the Court grants in part and denies in part Defendants' Motion to Dismiss for failure to state a claim [ECF Nos. 35, 48].

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  4/18/2018